JOHN R. HAGAMAN v. J. M. BERNHARDT AND S. F. HARPER.

(Filed 22 May, 1913.)

1. Appeal and Error—Appeal by Two Parties—One Record.

Where both defendants appeal to the Supreme Court on exceptions which are not antagonistic to each other, it is an unnecessary expense to send up separate records.

2. Deeds and Conveyances—Evidence—Maps Unidentified.

Where boundaries to lands are in dispute,. a map is incompetent as evidence when there is nothing thereon to identify it, and it is not attached to any muniment of title.

3. Deeds and Conveyances—Boundaries — Admitted Corners — Evidence.

In an action involving a disputed boundary to lands, *Held*, testimony of a witness that in surveying the land he had commenced at a spanish oak marked as a corner, etc., was competent, as the spanish oak was admitted to. be the corner by both parties to the controversy.

4. Deeds and Conveyances—Boundaries—Disputed Corners—Declarations—Interests—Evidence.

Declarations of one as to a disputed corner of lands in controversy, as the one he claimed at that time as a corner of his own lands, is incompetent, being in his own interest.

5. Deeds and Conveyances—Boundaries—Disputed Corners — General Reputation—Evidence.

The reputation of the marking of a disputed corner to lands in controversy is incompetent as evidence, it being necessary to show its general reputation as such.

6. Deeds and Conveyances—Boundaries—Course and Distance—Evidence—Instructions.

The lands in dispute in this case involve the location of a boundary line which in part reads "south to and with C's line 145 poles to a stake," the next call being "east 135 poles to a stake in M. C.'s line": *Held*, a requested prayer for instruction should be refused, under all the circumstances, that "the call in said grant is 'south to and with said C's line 145 poles to a stake,'" which "would follow the C. line from the point E. 145 poles, *irrespective of course*, and at the end of the 145 poles, wherever that line would be, the line should turn east 'and continue that course until it struck the next line called for," it appearing that to run this line south in the direction and in the number of poles called for and then to run it in the direction and extent of the next call,

would close the calls to the deed, and that the charge of the court in this respect was correctly given. In such case the course (S.) and the distance (145 poles) should control, and not the various courses of C's line.

BROWN, J., dissenting.

APPEAL by defendants from *Adams, J.,* at May Term, 1912, of CALDWELL.

This is an action of ejectment, the plaintiff claiming to be owner and entitled to the possession of the land described in the complaint, of which the defendant S. F. Harper was in possession and the defendant J. M. Bernhardt has cut timber thereon, both defendants claiming title under G. A. Sullivan, and asking an injunction against the defendants from cutting said timber or removing that which has already been cut. The jury rendered a verdict in favor of the plaintiff, assessing the damages at $60. Judgment was rendered accordingly in favor of the plaintiff for the tract of land described in the first issue and for said damages. The defendants appealed.

*W. C. Newland for plaintiff.*
*Edmund Jones for defendant Harper.*
*Lawrence Wakefield and Mark Squires for defendant.*

CLARK, C. J. Both defendants appealed and sent up separate records, but as they were not on opposite sides nor presented antagonistic exceptions, this was an unnecessary expense. *Pope v. Lumber Co., ante,* 208. (McCurdy's appeal.)

The decision of this case depends upon the location of Grant No. 384 to Aaron Bradshaw. The first exception by the defendant Harper is for the refusal of the motion to nonsuit. This motion could not have been granted, as there was sufficient evidence to go to the jury.

Harper's second exception is for the refusal to admit in evidence a map claimed by the defendants to be a plat of McCaleb Coffey's land. This map consisted of some lines only, nothing being written upon it explaining what lands were referred to, and there was nothing to give it validity or authority as evidence in this controversy. It was not attached to any muniment of title, and was incompetent. *Jones v. Huggins,* 12

N. C., 134; *Dancy v. Sugg,* 19 N. C., 515; *Dobson v. Whisenhant,* 101 N. C., 645.

The defendant Bernhardt's first exception is to permitting the witness Sullivan to state that when he bought the land from Coffey and began to survey he commenced at a spanish oak marked as a corner down next to the river 30 poles from the river. The spanish oak referred to was admitted by both parties to be a proper corner of the land in controversy. Kirby, witness for defendants, testified under their examination, that J. T. Montgomery, now deceased, pointed out to him the spanish oak as the corner of the land in controversy.

Bernhardt's second exception is abandoned and his third exception is the same as Harper's first exception above. Bernhardt's fourth exception is the exclusion by the court of the map made by J. C. Harper, and was incompetent, upon the same authorities that are cited in passing upon Harper's second exception above. It was not attached to any deed and was merely an isolated plat, and not competent, in this controversy. Bernhardt's fifth exception is to the refusal of the court to permit C. C. Coffey to testify that his father, Thomas Coffey, pointed out to him a rock as the corner of Grant No. 4157. The witness stated that his father in pointing out this rock was pointing out to him his own lines. It was therefore incompetent as a declaration in his own interest.

Bernhardt's sixth exception was to the refusal of the court to allow the said witness to answer the question, "Do you know the reputation of the rock as being the corner of Grant No. 4157?" This seems to be repetition of the last question above, for the witness was not asked if he knew the *"general* reputation of said rock as a corner."

The chief exception and controversy seems to be this: The defendants asked the court to charge that "the call in said grant is 'south to and with said Elijah and Wilborn Coffey's line 145 poles to a stake,' and the court charges you that the line of the Bradshaw grant would follow the Wilborn Coffey line from the point E. 145 poles, irrespective of course, and at the end of the 145 poles, wherever that might be, the line should turn east and continue that course until it struck McCaleb Coffey's line,

the next call of the Bradshaw grant being 'east 135 poles to a stake in McCaleb Coffey's line.'" Instead of this, the court charged: "The proper interpretation of the next succeeding call in the Bradshaw grant, 'thence south to and with Wilborn Coffey's line 145 poles to a stake,' would be met by running the line from the circle in the parallelogram to the line E F, and then from the intersection of these two lines south 145 poles along the line E F and to the *'south as far as the distance may extend.'"*

We think there was no error in the above respect. If the prayer asked by the defendant had been given, the lines could not have been closed. Under the instruction given, the jury followed the line E F, which was the Wilborn Coffey line (as admitted by the defendants) prolonged to 145 poles.

Under the defendants' prayer, if given, the line would have followed the Wilborn Coffey line a short distance south, and then have turned west with that line and then south, and the lines, as already said, would not have closed. Under the instruction as given, the line ran with the Wilborn Coffey line till it turned square off to the west, and then kept on in its course "south to a stake 145 poles from E" (where the line had struck the Wilborn Coffey line). It could not have been intended to follow all the turns of the Wilborn Coffey line, irrespective of course.

No error.

BROWN, J., dissenting.