YADKIN LUMBER COMPANY v. JOHN M. BERNHARDT.

(Filed 28 May, 1913.)

1. **Deeds and Conveyances—Grants — Boundaries — Questions for Court—Questions for Jury.**

What are the termini or boundaries of a grant or deed is a matter of law; but where they are is a question of fact. The court must determine the former question, and it is for the jury to ascertain the latter.

2. **Same—Natural Objects—Course and Distance.**

Where there is a call for natural objects, and course and distance are also given, the former are the boundaries, and the latter merely guides to them; and in applying the principles, where the line of another tract is called for and the same is identified, fixed, and established, such line is considered as a natural object.

3. **Same.**

Where the call in a conveyance of land is to the line of another tract which is identified, fixed, and established, it will ordinarily control the course and distance given, when in conflict, for they are considered merely as guides to the line called for.

4. **Same—Parol Evidence—Questions.**

The determination of an action to recover land was made to depend upon the interpretation of the calls in a grant to C., as follows: 100 acres, etc., beginning at a white pine, running thence 10 poles to a white pine, corner of 150-acre tract; thence 86 poles to two white oaks, etc., "thence east to a stake in the line of a 50-acre tract"; thence south 96 poles to a stake, etc.; thence west, etc., to the beginning. There was evidence tending to show that C. owned two 50-acre tracts at the time, and to run the line to the corner of one of them would deflect it a little from the course called for in the grant, and extend the line from 167 poles to 308 poles, and by following the course and distance from the point in the remaining calls in the deed it would include the *locus in quo*: *Held*, the former calls in the grant having been fixed, it was a question for the jury to determine upon proper evidence what 50-acre grant was intended by the call, "east 167 poles to a stake in the line of a 50-acre tract," and they should consider on that question the evidence that C. had a 50-acre grant, to be reached by a slight deflection of the course and extension of the line; and also, as relevant to the inquiry in this case, that the warrant and entry of survey contained as a part of the description, that the grant began at or near the 150-acre

grant of C., an admitted point, and included all the land between
that and a 50-acre tract which sought to be identified as a line
called for in the conveyance relied upon.

APPEAL by defendant from *Lyon, J.,* at November Term,
1911, of CALDWELL.

Civil action to recover land. Plaintiff introduced two grants
covering the land in controversy, bearing date 29 December,
1875, and as to such land, connected itself by mesne convey-
ances with the grantees, and offered evidence further tending
to show trespasses on the same by defendant.

"Plaintiff further adduced evidence tending to show that at
the time the 100-acre grant, No. 566, was taken out by William
Cottrell, James Cottrell had a 25-acre grant immediately east
of the northern line of said grant; also a 50-acre grant imme-
diately east of Grant No. 3390; also that William Cottrell had
land south of No. 3390, and that the same William Cottrell
had a 50-acre grant lying to the south of Grant No. 566. Evi-
dence was also adduced tending to prove that an extension of
the north line of Grant No. 566 from figure 2 by way of 5 east
as called for in that grant would strike the James Cottrell 25-
acre grant and not the William Cottrell 50-acre grant."

Defendant offered in evidence Entry No. 1333, as follows:
"William Cottrell, Sr., enters and locates 100 acres of land on
the Long Ridge Branch, waters of Buffalo Creek, beginning at
or near his corner of his 150-acre tract, ·including all the
land between the 150- and 50-acre tracts. November 6, 1854."
And the warrant of survey on said entry formally stated and
certified as follows: "You are hereby directed and required,
so soon as may be, to lay off and survey for William Cottrell
100 acres of land on the Long Ridge Branch, waters of Buffalo
Creek, beginning at or near his corner of his 150- and 50-acre
tract, entered 6 November, 1854." And the certificate of sur-
vey on said warrant, with plat attached to State's Grant No.
566, containing the description, "Begins at a white pine and
two chestnut trees by the Falls of Pounding Mill Branch, and
runs north 10 poles to a white pine, corner of a 150-acre tract,
the same course with the line of said tract 86 poles to two white

oaks on the east side of a hill, then east 167 poles to a stake in the line of a 50-acre tract, thence south with that line 96 poles to a stake in a line running east from the beginning, then with that line west to the beginning."

And Grant No. 566, containing the following calls: "One hundred acres lying and being in the county of Caldwell, on the waters of Buffalo. Begins at a white pine and two chestnut trees by the Falls of Pounding Mill Branch, and runs north 10 poles to a white pine, corner of 150-acre tract, the same course with the line said tract 86 poles to two white oaks on the east side of a hill (then east 167 poles to a stake in the line of a 50-acre tract), thence south with line 96 poles to a stake in a line running east from the beginning, then with that line west to the beginning. Entered 6 November, 1854."

Plaintiff then introduced a grant to William Cottrell for 50 acres, No. 3390, lying entirely from 566.

In order to a better understanding of the questions in controversy and the admissions of the parties, the plat is inserted on opposite page.

Admissions were then made as follows: "That the beginning corner of the grant, No. 566, is marked on the court map at the point 1 with the hand pointing towards it, and that such is the beginning corner of said grant. It is further admitted that the second corner in said grant is at the point marked W. P. on map, 10 poles north of 1, and that such point is a corner of a 150-acre tract. It is further admitted that the third corner of Grant No. 566 is at the point marked 2 W. O., with the hand pointing towards the figure 2, as shown on the court map, and that such point is 86 poles north of the white pine and 96 poles north of the beginning corner—the white pine and two chestnuts by the Falls of 'Pounding Mill Branch' —and that the two white oaks at the figure 2 are on the east side of a hill."

And further: "That the William Cottrell, senior, who obtained a grant for lands represented on the map as Grant No. 566, was the same person as the William Cottrell who obtained a grant of lands shown on the map as Grant No. 3390, for 50 acres. Plaintiff further admits that Grant No. 3390 is correctly located as shown on the map. Plaintiff further admits

that the defendant holds proper mesne conveyances from William Cottrell that constitute a good paper title, nothing else appearing, to such lands as are properly covered by Grant No. 566."

It will thus appear that *locus in quo* as represented on the above plat is included within the letter X and figures 3, 4, 6, and if Grant 566 under which defendant claims is "to be correctly located in exact accord with course and distance," it would be represented on the map by the figures 1, 2, 5, 6, and would not include this land, but if it may be and is properly extended to the William Cottrell 50-acre grant, No. 3390, making the northern line 308, instead of 167 poles, it would then include the land in controversy and be represented on the plat by the figures 1, 2, 3, 4. On the facts in evidence, the court held and so charged the jury, that in locating the defendant's Grant No. 566, the course and distance would control, and the defendant's title, more especially in reference to running the call east 167 poles under the same, would stop where the distance gave out and go where the course carried it, regardless of the additional call, "to the line of a 50-acre tract," the court holding that such addition to the call is too indefinite to affect the location, etc. There was verdict for plaintiff establishing the lines at 1, 2, 5, and 6. Judgment on the verdict, and defendant excepted and appealed.

*Councill & Yount and Edmund Jones for plaintiff.*
*Lawrence Wakefield and Mark Squires for defendant.*

HOKE, J., after stating the case: In *Tatem & Baxter v. Paine & Sawyer,* 11 N. C., 64, it was held: *"What* are the termini or boundary of grant or deed is matter of law; *where* these termini are is matter of fact. The court must determine the first, and to the jury it belongs to ascertain the second. Where there is a call for natural objects, and course and distance are also given, the former are the termini, and the latter merely points or guides to it; and, therefore, when the natural object called for is unique, or has properties peculiar to itself, course and distance are disregarded; but where there are sev-

eral natural objects equally answering the description, course and distance may be examined to ascertain which is the true object; for in such case they do not control a natural boundary, but only serve to explain a latent ambiguity."

The principles embodied in this statement have been frequently approved in our decisions, as in *Lumber Co. v. Hutton,* 159 N. C., 445; *Sherrod v. Battle,* 154 N. C., 346; *Mitchell v. Welborn,* 149 N. C., 347; *Whitaker v. Cover,* 140 N. C., 280; *Fincannon v. Sudderth,* 140 N. C., 246; *Bonaparte v. Carter,* 106 N. C., 534; *Murray v. Spence,* 88 N. C., 357; *Corn v. Mc-Crary,* 48 N. C., 496; *Campbell v. Branch,* 49 N. C., 313. From these and many other cases on the subject, it will appear further that in reference to course and distance the call in deed for the line of another tract of land is to be considered and dealt with as a natural object, and, applying the doctrine, it may be taken as a fully established position in our law of boundary, "That where the line of another tract is definitely called for as one of the termini of a call in a grant or deed, and this line is fixed and established, it will control a call by course and distance." *Lumber Co. v. Hutton, supra; Whitaker v. Cover, supra; Fincannon v. Sudderth, supra.*

It will be noted that in order to the proper application of this principle, the line called for must be "identified, fixed and established," or the position does not govern; but when the conditions exist which call for its application, it is then not a question of whether the writer of the deed or the parties to it intended to take in so much land or to extend the line of the principal deed to so great a length, but, in the language of *Henderson, J.,* in *Tatem v. Sawyer, supra,* "Where there is a call for natural objects, and course and distance are also given, the former are the termini and the latter merely points or guides to it." And if the line is properly fixed and established pursuant to recognized rules it makes no difference whether it was marked or unmarked. *Corn v. McCrary,* 48 N. C., 496.

The learned judge who tried the cause was no doubt familiar with the principle to which we have referred, but held that it should not prevail in this case, being of opinion that the call

of defendant's grant and deeds, to wit, "thence east 167 poles to a stake on the line of a *50-acre* tract," was too indefinite to permit the reception of parol testimony either to identify or place the corner. But the authorities more directly relevant do not sustain this view. Thus in *Lawrence v. Hyman,* 79 · N. C., 209, the .call of the deed was, "Beginning at the north corner of the store," the store standing equally east and west and having two north corners, held that the case presented a latent ambiguity, to be explained by. parol testimony.

In *Graybeal v. Powers,* 76 N. C., 66, the call in dispute was, "thence S. 33 west 100 poles to a stake in Simeon Graybeal's line," and it was held, among other things:

1. A call for the line of another tract of land is "a natural boundary," and controls course and distance.

2. In running the call, the line must be run straight, so as to strike the line called for, making as small a departure as may be from the course and distance called for in the grant.

3. Where there are two lines answering the call, the jury, in determining .which is meant, may consider the circumstance that lines were run by .the surveyor and corners made at the time of the survey, leading to one of them.

And, speaking more directly to the facts, *Pearson, C. J.,* delivering the opinion, said: "In our case there is a natural boundary, 'Simeon Graybeal's line,' but it so happens that Simeon Graybeal owned two tracts, one a 30-acre tract, which I will call Tract No. 1, and another tract which I will call Tract No. 2, lying west of Tract No. 1, and distant from it some 30 or 40 poles. It is evident from that plat that 'the Simeon Graybeal line' called for is either the north or south line, bounding Tract No. 1 on the west and marked C D, or it is the north and south line, bounding Tract No. 2 on the east and marked F E. Which of these two lines is the one that is called for is 'the governing fact in the location of the defendant's grant,' and ought to have been distinctly left to the jury with instructions to consider all the evidence and the surroundings of the case, including the marked line and corners, etc."

Again, in *Topping v. Sadler,* 50 N. C., pp. 357-359, the call was, "thence southerly 80 poles to the patent line, thence with the patent line," etc., and it was held: "Where one of the calls

in a deed was for a patent line, and there was one patent proved, a line of which would be reached by extending the line in question beyond the distance called for, and no other patent was alleged to be near the premises, it was held that the call was sufficiently definite to allow the extension of the line to the patent line."

The former corners of the William Cottrell 100-acre Grant No. 566 having been fixed, a proper application of the principle of these decisions will require that on the call of said grant, "then east 167 poles to a stake in the line of a 50-acre tract," the question be submitted to a jury to determine what 50-acre grant was intended and where the same is properly placed, and on considering the question, the fact that the same William Cottrell had a 50-acre grant to be reached by a slight deflection of the course and extending the line from 167 poles to 308 poles, and that both on the entry and warrant of survey of Grant 566 for 100 acres as part of the description, "beginning at or near the corner of his 150-acre tract, including all the land between the 150- and 50-acre tracts," are circumstances relevant to the inquiry. If the jury are unable to identify the 50-acre tract called for or to satisfactorily place the same, the courses and distances as given in the grant should prevail.

For the error in excluding the testimony, defendant is entitled to a new trial, and it is so ordered.

New trial.

CLARK, C. J., dissenting: Grant No. 566 contains the following calls: "100 acres lying and being in the county of Caldwell, on the waters of Buffalo. Begins at a white pine and two chestnut trees by the Falls of Pounding Mill Branch, and runs north 10 poles to a white pine, corner of 150-acre tract, the same course with the line of said tract 86 poles to two white oaks on the east side of a hill (then east 167 poles to a stake in the line of a 50-acre tract), thence south with line 96 poles to a stake in a line running east from the beginning, then with that line west to the beginning. Entered 6 November, 1854."

It was admitted that the beginning corner of Grant No. 566 as marked on the map, at the point 1, is the true beginning, and that the second corner is at the point marked W. P. on the map, 10 poles north of 1, and that such point is the corner of 150-acre tract. It was further admitted that the third corner of Grant 566 is at the point marked 2 W. O., and that such point is 86 poles north of the white pine and 96 poles north of the beginning corner—the white pine and two chestnuts by the Falls of "Pounding Mill Branch"—and that the two white oaks at the figure 2 are on the east side of a hill.

There was no difficulty whatever in locating the grant according to course and distance, especially with these points admitted. The court properly charged that, under these circumstances, "course and distance control, and that the defendant's title to the 100-acre grant would stop wherever the distance gave out and would go where the course carried it, regardless of the additional call, 'to the line of a 50-acre tract'; the court holding that that addition to the call was too indefinite, and the jury should find as a fact on the evidence that the corner was where the distance gave out and where the course went to."

Surely this cannot be error, when to consider the additional call, "to the line of a 50-acre tract," would make the call indefinite and uncertain, and indeed render uncertain that which before was certain.

It has been universally held by this Court in a line of decisions beginning as far back as *Harry v. Graham,* 18 N. C., 76, and continuing to the present, that "the course and distance called for must control unless there is another call *more definite and certain than course and distance.*"

The additional call here is "to a stake in a 50-acre tract." This could not possibly be made more indefinite nor uncertain. It is a call for an unfixed and unmarked point and in no particular grant. The grant is not even designated by the name of a grantee. There is evidence that there are three 50-acre tracts near this grant. One is east, though it is marked 25 acres; another a little south of east, which the defendant wishes the jury to guess is the one intended, and another nearly

southeast. Indeed, "50-acre" tracts in that section are known to be as thick as the traditional blackberry.

Besides, there is no evidence whatever that the lines of the 50-acre tract which the defendant "guesses" is the correct one had been surveyed at the time that Grant No. 566 was taken out. It was stated on the argument that in fact it had not been, but that merely the east line thereof had been laid down on a plat. As the first line of said grant was on the east side of it, the west line of that tract, which would be the line in which the "stake" would necessarily be, could not be designated, and there was nothing to show the shape of said tract or where the west line would be found.

It is impossible to find a more uncertain call than for a stake, in the unsurveyed west line, of *a* 50-acre tract, which is not identified, whose owner is not even known, and the shape of which was not indicated. The west line, when finally surveyed, might be nearer or farther from the east line of said tract. The owner of the tract is not named, the west line is not located, and "*a* 50-acre tract" is common in that section, and three of them are shown in this evidence to be somewhere more or less east of Grant No. 566.

It is true that in *Cherry v. Slade,* 7 N. C., 82, the Court held that when the boundary of another tract is called for it would be considered a natural boundary and more certain than course and distance, *"provided it be sufficiently established."* In *Lumber Co. v. Hutton,* 152 N. C., 537, the Court held that when the course, distance, number of acres, and plat are more definite, and the application of the call for the boundary of another tract was inconsistent, the latter must give place to the former, for "the reason for the rule had ceased." The rule in *Cherry v. Slade* is not a statute, neither is there any sacredness attaching to it. It was simply a judicial expression of the opinion that when under the circumstances the boundary of another tract offered more certainty than ·the other descriptions, the call for the boundary should govern.

In *Lumber Co. v. Hutton,* 159 N. C., 445, it was held that the call for the boundary should govern, because additional evidence had been offered on the second trial, which showed

that the boundary of another tract was "a well recognized and established line," and was so found to be by the jury. But even then there were two dissenting opinions, for the result had been to give the grantee fourteen times the acreage named in his grant and plat. That surely should have been the *ultima thule* of the doctrine; but if we are now to hold that, notwithstanding definite courses and distances and admitted corners, the call for a stake in the unmarked boundary of an unlocated tract of an indefinite owner is to govern by the force of attraction, then indeed we are on a boundless and uncharted sea, without course and distance, and with the compass diverted from its direction by a power without limit and an attraction beyond calculation.

The general rule has always been that land must be located according to the primary calls of the deed, unless there are others more certain, and that an uncertain description should yield to one which is certain and less liable to disappoint the intention of the parties. In the case at bar the call for a stake unmarked in the line of *"a* 50-acre tract" is not a more certain call and does not bring this case within the exception to the well-known general rule that course and distance will govern, *unless* the line of another tract which is "known and established" is called for. To grant the defendant's contention gives him 200 acres instead of the 100 which the State granted him and which is all he paid for.

*Cherry v. Slade* is not a general rule, but it is *an exception to the general rule,* and is only to be applied in those cases in which such exception is called for by reason of its furnishing greater certainty. The exception should not destroy and swallow up the rule. The description about which there is the least liability of error should be adopted, to the exclusion of the other. *Campbell v. Branch,* 49 N. C., 313.

There was no evidence by which the jury could locate "a" 50-acre tract called for in the defendant's grant, nor any evidence that the west line of such tract, nor any line thereof, had been run and marked. The course and distance in Grant No. 566 were not only the most certain means, but indeed the only

means by which said grant could be located, and his Honor properly told the jury to follow the definite courses and distances therein given.

. BROWN, J., concurs in dissent.