ELBERT BATSON AND WIFE, MABEL BATSON; WILBUR BATSON AND WIFE, ELEANOR BATSON; CECIL BATSON AND WIFE, GENEVA BATSON; THOMAS H. BATSON (SINGLE); MABEL JORDAN AND HUSBAND, GEORGE JORDAN; H. W. BATSON (SINGLE), HEIRS OF JOHN BATSON, DECEASED; AND MATTIE BATSON, WIDOW OF JOHN BATSON v. E. E. BELL AND WIFE, NANNIE C. BELL.

(Filed 18 March, 1959.)

**1. Boundaries § 8—**

What are the boundaries of a tract of land is a matter of law to be determined by the court from the description set out in the conveyance; where those boundaries are located on the ground is a factual question for the jury.

**2. Boundaries § 3—**

Ordinarily, the boundaries of a parcel of land should be determined by following the directions given in the deed in sequence, and a call may be reversed only to establish the location of a corner which cannot otherwise be located.

**3. Boundaries § 2—**

While course, distance and calls to fixed monuments will be harmonized if possible, if this cannot be done, a call to a natural monument will control course or distance.

**4. Same—**

An established line of another tract is such a monument as controls course and distance.

**5. Same: Boundaries § 8— Evidence tending to establish line of adjacent grant as natural monument is sufficient predicate for location of boundary by jury.**

Plaintiffs introduced in evidence their grant which called for the northern line of the "William B. Sidbury" grant as its southern boundary, and introduced evidence tending to locate the northern line of the "William B. Sidbury grant." *Held:* Plaintiffs had introduced evidence sufficient to permit the jury to find the northern line of that grant as their southern boundary, notwithstanding that this boundary would almost double the north-south line as called for in plaintiffs' grant and notwithstanding the absence of testimony that the William B. Sidbury line located by the witnesses was the same line called for in their grant,

there being no evidence that the line was not in fact the line referred to in their grant.

MOORE, J., not sitting.

APPEAL by plaintiffs from *Bone, J.*, September 1958 Term of PENDER. This is an action to determine ownership of 2.7 acres on Topsail Beach. Plaintiffs allege a trespass and adverse claim by defendants constituting a cloud on their title. Defendants admit the entry and adverse claim. They deny plaintiffs are the owners of the disputed area. Nonsuit was entered at the conclusion of plaintiffs' evidence. They excepted and appealed.

*John J. Best and Wyatt E. Blake for plaintiff appellants.*
*Larkins & Brock and Ward & Tucker for defendant appellees.*

RODMAN, J.   Plaintiffs trace title to a grant to Jessie W. Batson for 51 acres dated 20 April 1859. Determinative of the appeal is this question: Have plaintiffs offered any evidence which will permit a jury to find that the disputed area lies within the boundaries of the Batson grant?

The rules applicable to the ascertainment of boundaries trace back to the early history of the State. They are firmly established by numerous consistent decisions.

What are the boundaries is a matter of law to be determined by the court from the description set out in the conveyance. Where those boundaries may be located on the ground is a factual question to be resolved by the jury. *Jenkins v. Trantham,* 244 N.C. 422, 94 S.E. 2d 311; *Greer v. Hayes,* 216 N.C. 396, 5 S.E. 2d 169; *Tatem v. Paine,* 11 N.C. 64.

The location of the boundaries of a parcel of land should be determined by following the directions and in the sequence given in the conveyance to each designated corner. If a particular corner is unknown and cannot be determined by adhering to the directions in the sequence specified, it is permissible to go to a subsequent known or established corner and by reversing the direction fix the location of the unknown corner. This backtracking is permissible only because it permits the location of an otherwise unknown corner. *Powell v. Mills,* 237 N.C. 582, 75 S.E. 2d 759; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366; *Lindsay v. Austin,* 139 N.C. 463; *Harry v. Graham,* 18 N.C. 76.

An effort should be made to harmonize all directions given for the location of a boundary; but if this is not possible and a conflict ex-

ists between course or distance or both and a fixed monument, natural or artificial, the call for the monument will control. The law presumes there is less likelihood of error in the call for a known and fixed point than a call for course or distance. *Trust Co. v. Miller,* 243 N.C. 1, 89 S.E. 2d 765; *Lance v. Cogdill,* 236 N.C. 134, 71 S.E. 2d 918; *Cherry v. Slade,* 7 N.C. 82; *Witherspoon v. Blanks,* 1 N.C. 157.

An established line of another tract is such a monument as controls course and distance. *Coffey v. Greer,* 241 N.C. 744, 86 S.E. 2d 441; *Newkirk v. Porter,* 237 N.C. 115, 74 S.E. 2d 235; *Lumber Co. v. Bernhardt,* 162 N.C. 460, 78 S.E. 485; *Dula v. McGhee,* 34 N.C. 332; *Smith v. Murphey,* 3 N.C. 183.

Plaintiffs put in evidence the Batson grant. It recites that the land granted adjoins that of Frederick Rhue. The specific description is:

"BEGINNING at a stake William B. Sidbury's corner on the sound running thence with said Sidbury's line across the Banks south twenty five east sixty six poles to a stake at the edge of the Ocean; thence with the edge of the Ocean north fifty three east one hundred and seven poles, to Frederick Rue's line; thence with Rue's line north twenty five, west eighty eight poles to Crooked Creek; thence with the meanders of said Creek to the Beginning."

The description declares the northern and southern boundaries are the lines of Rhue and Sidbury. The waters forming the eastern and western boundaries are natural boundaries and not controverted.

To establish the location of the northern boundary of the Batson grant plaintiffs offered in evidence a grant to Frederick Rhue dated 18 November 1854 for 114 acres on Topsail Banks. The description of that tract, so far as here pertinent, reads:

"BEGINNING at a stake at Cokel or Crooked Creek landing on the sound side, then south thirty-five east ninety two poles to the Ocean . . ." The parties are in agreement as to the correct location of the beginning corner of this grant. No controversy exists as to the correct manner of running from the beginning to the ocean. Three sides of the Batson grant are thus admitted—the water on the east and west and the Rhue line on the north. Only the southern line is in dispute. That is the first call in the Batson grant.

. To establish the location of the first or southern line of the Batson grant plaintiffs offered in evidence grant No. 1740 to William B. Sidbury. This grant, dated 4 January 1844, is for 170 acres between Topsail Inlet and Stump Inlet. The description reads:

"BEGINNING on a dead cedar at the east end of a hammock near Cokel Creek Pond; thence South twenty three east fifty poles to a stake; thence south fifty west two hundred and sixty poles to a

stake between the hammock and the Atlantic; thence North twenty three west one hundred and sixty poles to a stake in the sound; thence to the beginning."

The first or Southern line of the Batson grant is shown on the map prepared by Blanchard, appointed by the court to survey plaintiffs' contention, as beginning at letter A on the sound. It runs thence south 23 east 50 poles to letter B. This line, extended another 14 poles to the ocean is indicated by the figure 1. This is the point which plaintiffs claim as the terminus of the first line of the Batson grant. From this point the distance along the ocean to the terminus of the first line of the Rhue grant is 3474.5 feet, or more than twice the distance called for in the Batson grant. If the line A— 1 is the first line of the Batson grant, the land in dispute is within its boundaries; but if the southern line of the Batson grant is only 107 poles from the Rhue line, the disputed area is outside the grant.

Plaintiffs offered evidence tending to fix the beginning point of grant No. 1740 to William B. Sidbury at point A on the Blanchard map and the line A-B as the first line of that grant. Witnesses testified to the location of the end of the hammock and Cokel Creek Pond called for in the Sidbury grant. They testified that line A-B was pointed out by disinterested witnesses more than fifty years ago, when no controversy existed with respect to the location of the Sidbury line. The competency of this evidence was not challenged. Defendants, by cross-examination, sought to show its want of probative value.

The parol testimony was, by the witnesses, limited to the location of the northern line of the William B. Sidbury grant. There was no testimony that it was the line of the Batson grant.

In this situation was it a question for the court or a jury to decide whether the William B. Sidbury line located by the witnesses was *the* William B. Sidbury line called for in the Batson grant?

There is no suggestion in record or brief that the first line of the William B. Sidbury grant is not in fact *the* William B. Sidbury line referred to in the Batson grant. Whether it is or is not the line of that grant was a question of fact for the jury. If the jury should so find, the jury would have to find that plaintiffs' location of that line was in fact the correct location. The evidence sufficed to require the submission of these questions to the jury. *Cherry v. Andrews,* 229 N.C. 333, 49 S.E. 2d 641; *Carter v. Vann,* 189 N.C. 252, 127 S.E. 244; *Hoge v. Lee,* 184 N.C. 44, 113 S.E. 776; *Gray v. Coleman,* 171 N.C. 344, 88 S.E. 489; *Pearce v. Waters,* 169 N.C. 240, 84 S.E. 339; *Lumber Co. v. Bernhardt, supra; Sherrod v. Battle,* 154 N.C. 345, 70

S.E. 834; *McNeely v. Laxton,* 149 N.C. 327, 63 S.E. 278; *Bonaparte v. Carter,* 106 N.C. 534; *Graybeal v. Powers,* 76 N.C. 66; *Hill v. Mason,* 52 N.C. 551; *Topping v. Sadler,* 50 N.C. 357; *Spruill v. Davenport,* 46 N.C. 203; *Hough v. Horne,* 20 N.C. 369; *Brooks v. Britt,* 15 N.C. 481.

A mere dispute as to the correct location of the first line did not, as appellee contends, require a reversal of the calls to determine the location. The discrepancy in distance is a factor which the jury can take into consideration in fixing the location.

. Reversed.

MOORE, J., not sitting.