TYSON, Judge.
 

 *136
 

 *2
 
 Emily Urquhart Ayscue ("Ayscue") appeals from an order determining the location of the boundary division line between her property and an adjoining tract. Ayscue also appeals from an order denying her Rule 60 motion for reconsideration.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 60 (2017).
 

 I.
 
 Background
 

 This case concerns a disputed boundary line between neighboring tracts of real property, both of which are located along a portion of the Roanoke River. Ayscue, Thomas Mizell Urquhart, Jr., and Betsey Derr Urquhart (collectively, "Plaintiffs") own one tract as tenants-in-common and an adjoining tract is owned by Lowgrounds Land Co., LLC ("Lowgrounds"), a North Carolina limited liability company. Burges Urquhart Griffin, Jr. is a member/manager of Lowgrounds. Plaintiffs and the individual defendant, Griffin, are family members.
 

 Both Plaintiffs' and Defendants' tracts were originally portions of the estate of Burges Urquhart, who died in 1903. Plaintiffs and Griffin are descendants of Burges Urquhart. Upon Burges Urquhart's death, his real property was divided among his five children. Burges Urquhart's real property was divided through a plat map of the entire property prepared by surveyor, William Parker, and dated 5 December 1905 ("the Parker Plat"). The Parker Plat was filed in the Bertie County Registry and is recorded at Book 138, Page 183.
 

 *3
 
 In 1965, L.T. Livermon, Jr., R.L.S., drew a new map of the Burges Urquhart tracts shown on the Parker Plat without re-surveying the property and recorded his map in the Bertie County Registry at Map Book 2, Page 106 ("the Livermon Map"). The 1965 Livermon Map includes an express disclaimer: "There was no error of closure calculated." It is unclear if the boundary lines of the respective tracts shown, including the subject properties, as depicted on the 1965 Livermon Map actually close.
 

 In 2013, Plaintiffs hired surveyor Mark Pruden, R.L.S, to prepare a survey of the disputed boundary line as shown on the Parker Plat. Pruden conducted an initial survey and then a corrected version ("The Pruden Survey"). The Pruden Survey is recorded in the Bertie County Registry at Map Book 13, Page 820. The Pruden Survey displays the boundary line between the parties' properties lying between two points east of a pond called "Blue Hole." Pruden testified in a deposition that he had determined the boundary line of the respective tracts by using the same bearing as the boundary line on the 1905 Parker Plat. The Pruden Survey depicts the common boundary line of the respective properties as having the bearing of N 27°30'00? W, which is equivalent to the bearing of "S 27 ½ E" for the boundary line shown on the Parker Plat. The Pruden Survey does not depict the boundaries of all of Plaintiffs' and Defendants' properties, does not demonstrate any error of closure, and shows only the disputed boundary line and southern border of Plaintiffs' property. Pruden's testimony does not indicate he surveyed each of the parties' tracts in their entirety.
 

 Defendants hired surveyor, Randy Nicholson, R.L.S., to map the location of the boundary line in late 2013. Nicholson's map ("the Nicholson Map") shows the purported boundary line as contended by Plaintiffs and Pruden. The Nicholson Map indicates and locates the actual boundary line as lying between two points situated west of the boundary line shown on the Pruden Survey and as contended by Plaintiffs.
 

 On 26 February 2014, Plaintiffs filed a complaint alleging Defendants "came onto Plaintiffs' property without permission and
 
 *137
 
 cut down trees and other vegetation on approximately three and one half acres ... of Plaintiffs' property near the boundary line between Plaintiffs' and Defendant Lowgrounds's property" shortly before April 2013.
 

 Plaintiffs' complaint asserts claims for quiet title, trespass to land, and recovery of statutory double damages for "the value of the timber, shrubs, wood and trees injured, cut or removed from their [p]roperty" pursuant to
 
 N.C. Gen. Stat. § 1-539.1
 
 . Plaintiffs' complaint demands "a jury trial on all issues of fact to which they are so entitled."
 

 *4
 
 Defendants filed their answer and asserted, in part, that the property Plaintiffs' alleged Defendants trespassed upon is actually owned by Lowgrounds. Defendants also demanded in their answer "a jury trial on all issues of fact to which they are so entitled."
 

 On 11 March 2015, the trial court entered a consent order ("the Consent Order") to appoint surveyor Paul Toti, R.L.S., to "go upon the lands, find, mark and prepare a plat showing
 
 where on the ground said boundary lines exist
 
 " as shown on the Parker Plat. (Emphasis supplied). The Consent Order provides, in relevant part: "The parties agree that the survey, when completed may be used by the Court in determining the issues presented in the instant action."
 

 On 1 July 2016, before Toti had completed his survey, Plaintiffs filed a motion
 
 in limine
 
 to request an order instructing Toti to disregard the Nicholson Map in preparing his survey. Plaintiffs argued the line depicted on the Nicholson Map, which Defendants contend is the correct line, was based upon incompetent evidence, which Toti should not have considered in conducting his survey.
 

 Plaintiffs alleged that Toti presumed that the Nicholson Map was prepared by Nicholson after conducting an actual survey. Plaintiffs attached the deposition transcript of Nicholson to their motion
 
 in limine
 
 and argued Nicholson did not perform an "actual survey" to prepare his map, They assert Nicholson located and mapped the physical markings, stakes, and paint marks on trees that he had found and located in the field.
 

 On 7 November 2016, the trial court entered an order concluding Plaintiffs' motion
 
 in limine
 
 was premature because Toti had not yet completed his survey, and dismissed their motion without prejudice. The trial court's order further stated: "THAT upon the filing of said Toti Survey, should plaintiffs' determine that their motion should then be heard, the Court will entertain plaintiffs' motion at that time."
 

 After Toti had completed and presented his survey, Plaintiffs re-filed their motion
 
 in limine
 
 and the trial court held a hearing on 16 March 2017. At the hearing, the court heard the testimony of Thomas Mizell Urquhart, Jr., and Toti. At the conclusion of the hearing, without ruling upon Plaintiffs' motion
 
 in limine
 
 , the trial court orally rendered a ruling that the boundary line advocated by Defendants, as shown on the Nicholson Map, was the correct boundary line between the parties' properties.
 

 The trial court entered a written order on 1 December 2017, determining the final division boundary line between the parties' properties
 
 *5
 
 ("the Division Order"). The trial court made, in part, the following findings of fact:
 

 1. That pursuant to the Order of the court entered in this matter by consent of the parties, Paul J. Toti, obtained documents related to the assignment made in the Order from the records available at the Courthouse in Bertie County, including copies of the 1905 Parker Map as recorded in the office of the Register of Deeds of Bertie County ... and other maps recorded in the office of the Register of Deeds of Bertie County prepared by Mark Pruden and Randolph Nicholson, both surveyors previously employed by the opposing parties in this matter.
 

 2. That as a result of the research and the documents procured by Paul J. Toti, particularly relative to the order to conduct a survey of the real property shown on the 1905 Parker Map relative to the properties owned by the parties known as "No. 1 Gorden Land" and "No. 2 Gorden Land"(hereinafter the Property) and to go upon the lands and find, mark, and prepare a new plat showing where on the ground said boundary lines exist as depicted
 
 *138
 
 in the 1905 Parker Map, Paul J. Toti did go upon the lands and did, using his knowledge and skills as a registered land surveyor,
 
 attempt to comply
 
 with the Order by providing to the Court a map of his survey and he did file and submit to the Court such map of his survey of the subject Property, hereinafter termed Court Ordered Survey, showing thereon, in addition to exterior boundary lines of the whole tract as it currently exists, but also indicating thereon, two distinct sets of courses and distances which the parties, on maps filed by Pruden and Nicholson, have contended to be the correct division boundary between the properties of the parties[.] (Emphasis supplied).
 

 3. That in the process of completing the work assigned by the Court, Toti was not able to re-create the 1905 map in large part because of deficiencies with certain portions of that map that omitted distances, courses, and other matters that would have provided clear and documented evidence of the division line in question, particularly his inability to locate the "warehouse" which was noted on the 1905 [Parker] map as a relevant physical monument for the division line in question.
 

 *6
 
 4. That in the review of the Pruden maps and Nicholson maps, relative to the process, Toti indicated that while the Pruden maps were mathematically correct, they were not surveys of the relevant tracts and they did not attempt to "close" or otherwise graphically resolve the issues that were obvious from the deficiencies found in attempting to re-create on the ground the 1905 map as directed to him in the Court's prior order.
 

 5. That Toti stated that in his professional opinion, the Nicholson map of the property of the Defendant, Lowgrounds Land Co., LLC, was a graphically correct representation of the 1905 map and the division line between the tracts identified thereon as "No. 1 Gorden Land" and "No. 2 Gorden Land", and that the monumentation that was found by Toti while in the act of surveying the properties on site, as noted on the Court Ordered Survey provided to the Court in this matter, and the "graphic" match of the 1905 map to his graphic representation on the Court Ordered Survey, lead to his conclusion that the line represented on the Court Ordered Survey with points marked "G" to "C" is the proper division line of the properties identified on the 1905 map as "No. 1 Gorden Land" and "No. 2 Gorden Land".
 

 6. That Toti stated that in his professional opinion, after completion of the work necessary to prepare the Court Ordered [S]urvey provided to the Court in this matter, as a surveyor, he was bound to try to reconcile all of the evidence that was available and that based upon his review of the proceedings from which the 1905 map arose, the notations that appeared on such map, the use of the properties with regard to location of croplands and visible growth lines of trees where the properties had been timbered,
 
 it was his opinion that the line he had marked as "G" to "C" reflected the intention of the predecessors in title to divide the tracts indicated thereon as "No. 1 Gorden Land" and "No. 2 Gorden Land" into two tracts of nearly equal acreage in spite of the fact that the current relative acreage of the tracts owned by the Plaintiffs and Defendant, Lowgrounds Land Co., LLC, are no longer equal.
 
 (Emphasis supplied).
 

 *7
 
 7.
 
 That based upon the testimony and exhibits presented by Toti, the Court finds that the line which is marked "G" to "C" on the Court Ordered [S]urvey provided to the Court in this matter by the Court surveyor, is the division line between the properties of the Plaintiffs and the Defendants for purposes of this proceeding.
 
 (Emphasis supplied).
 

 ...
 

 Based on the foregoing Findings of Fact, the Court concludes that it has jurisdiction to enter an order in this matter, and in the exercise of its judicial discretion, the Court concludes that the Court Ordered [S]urvey rendered to this Court in this matter by Paul Toti, which survey is incorporated herein by this reference, property reflects the properties directed to be surveyed by the prior Consent Order in this matter, and that the line marked thereon represented as lying between the points marked
 
 *139
 
 "G" to "C" is the division line between the properties of the Plaintiffs and the Defendants for purposes of this proceeding.
 

 Also, based upon its findings of fact and the Toti Survey, the trial court decreed that the purported boundary line depicted on the Nicholson Map, which is the line advocated by Defendants, was the division line between the parties' properties.
 

 Plaintiffs filed a Rule 60 motion for reconsideration of the trial court's Division Order determining the division line.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 60. In their motion for reconsideration, Plaintiffs contended the trial court improperly converted the hearing on their motion
 
 in limine
 
 into a bench trial without prior and proper notice. Plaintiffs' motion for reconsideration also asserted that the Division Order foreclosed a hearing on their motion
 
 in limine
 
 as well as a jury trial on the ultimate issues of fact and their remaining claims.
 

 A hearing was conducted upon Plaintiffs' motion for reconsideration. On 9 January 2018, the trial court denied the motion for reconsideration. Ayscue filed notice of appeal of the trial court's order determining the final division line. All Plaintiffs, including Ayscue, filed notices of appeal of the trial court's order denying their motion for reconsideration. Only Ayscue filed an appellant brief with this Court.
 

 *8
 
 II.
 
 Jurisdiction
 

 Ayscue contends the trial court's Division Order and order denying Plaintiffs' motion for reconsideration "have effectively mooted Plaintiffs' claims, disposed of all issues, and obviated the need for a jury trial, and thus these Orders operate as a final judgment." The orders appealed from do not expressly or directly address Plaintiffs' claims for quiet title, trespass to land, and associated claims for punitive and statutory double damages; however, Plaintiffs' claims asserted in their complaint are all premised upon Plaintiffs' allegations that Defendants' were trespassing and foresting, injuring, cutting, or removing timber, shrubs, woods, and trees upon Plaintiffs' property. The trial court did not certify the orders for immediate appeal.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 54(b) (2017). As the trial court's orders did not expressly rule upon or dispose of Plaintiffs' claims, Ayscue's appeal is subject to challenge for being interlocutory. Defendants do not raise this issue in their brief nor have they filed a motion to dismiss Ayscue's appeal.
 

 "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."
 
 Veazey v. City of Durham
 
 ,
 
 231 N.C. 357
 
 , 362,
 
 57 S.E.2d 377
 
 , 381 (1950) (citation omitted). Generally, there is no right to an immediate appeal of an interlocutory order.
 
 Goldston v. American Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990).
 

 However, "immediate appeal is available from an interlocutory order ... which affects a substantial right."
 
 Sharpe v. Worland
 
 ,
 
 351 N.C. 159
 
 , 162,
 
 522 S.E.2d 577
 
 , 579 (1999) (quotation marks omitted);
 
 see also
 

 N.C. Gen. Stat. §§ 1-277
 
 (a) and 7A-27(b)(3)(a) (2017). In determining the appealability of interlocutory orders under the substantial right exception, we utilize a two-part test: (1) "the right itself must be 'substantial,' " and (2) "the enforcement of the substantial right must be lost, prejudiced or be less than adequately protected by exception to entry of the interlocutory order."
 
 J & B Slurry Seal Co. v. Mid-South Aviation, Inc.
 
 ,
 
 88 N.C. App. 1
 
 , 5-6,
 
 362 S.E.2d 812
 
 , 815 (1987). "The right to a jury trial is a substantial right of great significance."
 
 Mathias v. Brumsey
 
 ,
 
 27 N.C. App. 558
 
 , 560,
 
 219 S.E.2d 646
 
 , 647 (1975),
 
 disc. review denied
 
 ,
 
 289 N.C. 140
 
 ,
 
 220 S.E.2d 798
 
 (1976).
 

 The trial court's Division Order has effectively mooted all of Plaintiff's claims because, under the boundary line established by the trial court, Defendants were not cutting trees nor trespassing on Plaintiffs' alleged side of the boundary. Many prior precedents of the Supreme Court of
 
 *9
 
 North Carolina and this Court have recognized the issue of "[w]hat are the boundaries is a matter of law to be determined by the court from the description set out in the conveyance. Where those boundaries may be located on the ground is a factual question to be resolved by the jury."
 
 *140
 

 Batson v. Bell
 
 ,
 
 249 N.C. 718
 
 , 719,
 
 107 S.E.2d 562
 
 , 563 (1959) ;
 
 see
 

 Chappell v. Donnelly
 
 ,
 
 113 N.C. App. 626
 
 , 630,
 
 439 S.E.2d 802
 
 , 805 (1994) (quoting
 
 Batson
 
 );
 
 Young v. Young
 
 ,
 
 76 N.C. App. 93
 
 , 95,
 
 331 S.E.2d 769
 
 , 770 (1985) ("the question of what are the termini or boundaries presents a question of law for the court, while the question of where the boundaries or termini are located on the ground is generally a question of fact for the jury." (citations omitted) ).
 

 The trial court's Division Order showed it relied upon Toti's opinion that the line shown on the Nicholson Map and as advocated by Defendants is the correct boundary line. The Division Order effectively mooted all their claims and denied and deprived Plaintiffs' of their right to a jury trial on the factual issue of the "on the ground" location of the true boundary line.
 
 See
 

 Batson
 
 ,
 
 249 N.C. at 719
 
 ,
 
 107 S.E.2d at 563
 
 .
 

 Even though the 16 March 2017 hearing was only noticed to be on Plaintiffs' motion
 
 in limine
 
 , the trial court did not rule on the motion
 
 in limine
 
 but instead ruled on the ultimate factual issue of the location of the boundary line, without a jury trial.
 

 The trial court's orders effectively mooted and resolved all of Plaintiffs' claims and denied the demands in both Plaintiffs' complaint and Defendants' answer for a "jury trial on all issues of fact to which they are so entitled." Without immediate appellate review, Ayscue's substantial right to a jury trial on the critical preliminary issue of the location of the boundary line on the ground is prejudiced.
 
 Batson
 
 ,
 
 249 N.C. at 719
 
 ,
 
 107 S.E.2d at
 
 563 ;
 
 Mathias
 
 ,
 
 27 N.C. App. at 560
 
 ,
 
 219 S.E.2d at
 
 647 ;
 
 J & B Slurry
 
 ,
 
 88 N.C. App. at 5-6
 
 ,
 
 362 S.E.2d at 815
 
 . Ayscue's appeal is properly before this court.
 
 See
 

 Dep't of Transportation v. Wolfe
 
 ,
 
 116 N.C. App. 655
 
 , 656,
 
 449 S.E.2d 11
 
 , 12 (1994) ("since the trial court denied defendant's request for a jury trial the order affects a substantial right and is, therefore, immediately appealable." (citations omitted) ). In the exercise of our discretion and in the interests of judicial economy, we review Ayscue's appeal on the merits.
 

 III.
 
 Standard of Review
 

 With regards to the trial court's denial of Plaintiffs' motion for reconsideration, Plaintiffs' motion does not cite to any rule of civil procedure as providing the basis for the motion. This Court has previously treated motions for reconsideration as being asserted under
 
 *10
 
 Rule of Civil Procedure 60(b).
 
 See, e.g.,
 

 Henderson v. Wachovia Bank of N.C
 
 .,
 
 145 N.C. App. 621
 
 , 626-28,
 
 551 S.E.2d 464
 
 , 468-70 (analyzing defendant's "motion for reconsideration" of default judgment as motion for relief under Rule 60(b) ),
 
 disc. review denied,
 

 354 N.C. 572
 
 ,
 
 558 S.E.2d 869
 
 (2001). "[T]he standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion."
 
 Davis v. Davis
 
 ,
 
 360 N.C. 518
 
 , 523,
 
 631 S.E.2d 114
 
 , 118 (2006) (citing
 
 Sink v. Easter
 
 ,
 
 288 N.C. 183
 
 , 198,
 
 217 S.E.2d 532
 
 , 541 (1975) ).
 

 We review
 
 de novo
 
 the issue of the trial court's Division Order denying Plaintiffs' right to a jury trial.
 
 Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.
 
 ,
 
 353 N.C. 343
 
 , 348,
 
 543 S.E.2d 844
 
 , 848 (2001) ("It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated.").
 

 IV.
 
 Analysis
 

 A.
 
 Notice
 

 Ayscue argues the trial court improperly converted the noticed hearing on Plaintiffs' motion
 
 in limine
 
 into a bench trial and improperly decided the factual issue of the location on the ground of the disputed boundary line. Ayscue contends the motion for reconsideration should have been granted, in part, on this basis. We agree.
 

 North Carolina Rule of Civil Procedure 60(b) provides, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for [m]istake, inadvertence,
 
 surprise
 
 , or excusable neglect." N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) (emphasis supplied).
 

 "The surprise contemplated by the statute is some condition or situation in which a party to a cause is unexpectedly placed to his injury, without any fault or negligence of his own, which ordinary prudence
 
 *141
 
 could not have guarded against."
 
 Endsley v. Supply Corp.
 
 ,
 
 44 N.C. App. 308
 
 , 310,
 
 261 S.E.2d 36
 
 , 38 (1979) (quoting
 
 Townsend v. Coach Co.
 
 ,
 
 231 N.C. 81
 
 , 85,
 
 56 S.E.2d 39
 
 , 42 (1949) ).
 

 On 18 January 2017, Plaintiffs filed a notice of hearing solely for their motion
 
 in limine
 
 . The notice of hearing specifically indicates that the hearing was to be upon the same motion
 
 in limine
 
 that the superior court had denied without prejudice on 7 November 2016.
 

 The transcript from the 16 March 2016 hearing on Plaintiffs' motion
 
 in limine
 
 shows Plaintiffs had no prior notice the trial court was effectively conducting a bench trial on the issue of the on the ground location
 
 *11
 
 of the boundary line. Plaintiffs' counsel clarified at the beginning of the hearing that he and Defendants' counsel were there on Plaintiffs' motion
 
 in limine.
 

 Plaintiffs' had no prior notice or basis to know the trial court was going to issue a ruling on the location of the boundary line until the end of the hearing when the trial court ruled the location of the boundary line was the line advocated by Defendants.
 

 No party had moved or prompted the trial court to rule upon the factual issue of the location of the true boundary line on the ground, nor did the trial court indicate it intended to rule upon the location of the boundary line on the ground, until it did so at the end of the hearing. The hearing on Plaintiffs' motion was only calendared to consider Plaintiffs' motion
 
 in limine
 
 . This ruling by the trial court constitutes a surprise which "ordinary prudence could not have guarded against."
 
 Endsley,
 

 44 N.C. App. at 310
 
 ,
 
 261 S.E.2d at 38
 
 (citation omitted). Plaintiffs' motion for reconsideration should have been allowed.
 

 B.
 
 Right to Jury Trial
 

 Ayscue also argues the trial court "erred by determining the location of the boundary line without a jury trial and by denying Plaintiffs' requests for a jury trial." We agree.
 

 Article I, Section 25 of the North Carolina Constitution provides that, "in all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable." N.C. Const. art. I, § 25. North Carolina Rule of Civil Procedure 38 specifies the method by which a party is required to assert the right to trial by jury in civil litigation:
 

 (b) Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be made in the pleading of the party or endorsed on the pleading.
 

 ...
 

 (d) ... A demand for trial by jury as herein provided may not be withdrawn without the consent of the parties who have pleaded or otherwise appear in the action.
 

 N.C. Gen. Stat. § 1A-1, Rule 38 (2017).
 

 *12
 
 According to Rule of Civil Procedure 39, "When trial by jury has been demanded ... [t]he trial of all issues so demanded shall be by jury, unless ... [t]he parties who have pleaded or otherwise appeared in the action or their attorneys of record, by written stipulation filed with the court ... consent to trial by the court sitting without a jury[.]" N.C. Gen. Stat. § 1A-1, Rule 39. Here, it is undisputed Plaintiffs and Defendants both demanded a jury trial in their pleadings "on all issues of fact to which they are so entitled" in accordance with Rule 38.
 

 Defendants argue the Consent Order, agreeing for the court to appoint Toti, constituted a waiver by Plaintiffs of their right to a jury trial on the issue of the location on the ground of the disputed boundary line. The Consent Order states, in relevant part: "the parties agree that the [Toti] survey, when completed, may be used by the Court in determining the issues presented in the instant action."
 

 This language from the Consent Order does not amount to a waiver of Plaintiffs' right to jury trial.
 

 *142
 
 'It is a general rule, since the right of trial by jury is highly favored, that waivers of the right are always strictly construed and are not to be lightly inferred or extended by implication, whether with respect to a civil or criminal case. There can be no presumption of a waiver of trial by jury where such a trial is provided for by law. Thus, in the absence of an express agreement or consent, a waiver of the right to a jury trial will not be presumed or inferred. Indeed, every reasonable presumption should be made against its waiver.'
 

 Mathias
 
 ,
 
 27 N.C. App. at 560
 
 ,
 
 219 S.E.2d at 647
 
 (quoting
 
 In re Gilliland
 
 ,
 
 248 N.C. 517
 
 , 522,
 
 103 S.E.2d 807
 
 , 811 (1958) ).
 

 The Consent Order does not state that the trial court may use the Toti Survey to resolve all
 
 factual
 
 issues, nor does the Consent Order refer to the parties' rights to jury trial, or any waiver thereof.
 
 See
 

 id
 
 . The Consent Order does not include a stipulation that the boundary line determined by Toti would constitute the true boundary line for all purposes of Plaintiffs' action and Defendants' answer.
 
 See, e.g.
 
 ,
 
 Moore v. Richard West Farms, Inc.
 
 ,
 
 113 N.C. App. 137
 
 , 142,
 
 437 S.E.2d 529
 
 , 532 (1993) (affirming the trial court's order establishing a boundary line when the parties agreed to be bound by a survey prepared by an independent surveyor). We do not extend by implication the language of the Consent Order to hold Plaintiffs had waived their right to a jury trial.
 
 See
 

 Mathias
 
 ,
 
 27 N.C. App. at 560
 
 ,
 
 219 S.E.2d at 647
 
 .
 

 *13
 
 The issue of the "on the ground" location of a disputed boundary line is a factual one for the jury.
 
 Batson
 
 ,
 
 249 N.C. at 719
 
 ,
 
 107 S.E.2d at 563
 
 . By issuing the Division Order, the trial court improperly removed the factual determination of the location of the boundary line on the ground from the jury.
 
 See
 

 id.
 

 , N.C. Gen. Stat. § 1A-1, Rule 39. The ruling of the trial court deprived Plaintiffs of their properly demanded and preserved right to trial by jury and constituted a surprise under North Carolina Rule of Civil Procedure 60(b).
 

 Based upon the unfair surprise to Plaintiffs and the deprivation of the right to a jury trial, the trial court abused its discretion by denying Plaintiffs' Rule 60 motion for reconsideration.
 
 See
 

 Davis
 
 ,
 
 360 N.C. at 523
 
 ,
 
 631 S.E.2d at 118
 
 . The trial court's denial of Plaintiffs' Rule 60 motion is reversed, the Division Order is vacated, and the matter is remanded for further proceedings.
 

 C.
 
 Boundary Location is Issue of Fact
 

 In issuing the Division Order, the trial court exceeded the scope of the Toti Survey, and relied upon Toti's opinion testimony that the location of the line advocated by Defendants was the correct line. The Toti Survey shows both the boundary line advocated by Plaintiffs and the boundary line as advocated by Defendants. Toti testified that the boundary line as advocated by Plaintiffs is "mathematically correct," while the boundary advocated by Defendants is "graphically correct."
 

 The Nicholson Map depicts a warehouse and landing that were also marked and shown on the 1905 Parker Plat. The Parker Plat shows the common boundary line of the respective tracts as lying between the warehouse and landing. Toti testified that when he conducted his survey he could not locate a warehouse and "[i]f there was ever a landing there I can't tell where it was." Defendants' surveyor, Nicholson, had testified he had found the remnants of the warehouse and the landing along the Roanoke River.
 

 According to the trial court's findings of fact in the Division Order, the trial court decreed the line advocated by Defendants was the correct boundary line based upon Toti's expert opinion that "the intention of the predecessors in title to divide the tracts ... into two tracts of nearly equal acreage in spite of the fact that the current relative acreage of the tracts ... are no longer equal." The 1905 Parker Plat creating both tracts expressly shows Plaintiffs' tract, labelled "No. 2 Gorden Land," as consisting of 526 acres, and Defendants' tract, labelled "No. 1 Gorden Land," as consisting of 525 acres.
 

 *14
 
 Based upon our holding to vacate the Division Order and remand to the trial court, we tender precedents that "[a] court-appointed surveyor may not offer his opinion
 
 *143
 
 as to the location of a disputed boundary line[.]"
 
 Jones v. Arehart
 
 ,
 
 125 N.C. App. 89
 
 , 93,
 
 479 S.E.2d 254
 
 , 256 (1997) (citing
 
 Carson v. Reid
 
 ,
 
 76 N.C. App. 321
 
 , 323,
 
 332 S.E.2d 497
 
 , 499 (1985),
 
 aff'd
 
 ,
 
 316 N.C. 189
 
 ,
 
 340 S.E.2d 109
 
 (1986) ).
 

 V.
 
 Conclusion
 

 The trial court improperly deprived Plaintiffs of their right to a jury trial on the factual issue of the physical location on the ground of the disputed boundary line.
 
 See
 

 Batson
 
 ,
 
 249 N.C. at 719
 
 ,
 
 107 S.E.2d at 563
 
 . The trial court's ruling on the location of the boundary line constituted unfair surprise, and the court further erred by denying Plaintiff's Rule 60 motion for reconsideration.
 
 See
 

 Endsley
 
 ,
 
 44 N.C. App. at 310
 
 ,
 
 261 S.E.2d at 38
 
 . The trial court's Division Order is vacated. In light of our holding, it is unnecessary to address Ayscue's remaining arguments and preservations of error.
 

 This matter is remanded to the trial court for hearing upon Plaintiffs' motion
 
 in limine
 
 and for a jury trial on all matters so triable.
 
 It is so ordered
 
 .
 

 VACATED IN PART, REVERSED IN PART AND REMANDED.
 

 Judges CALABRIA and ZACHARY concur.