Ruffin, Judge.
 

 The case of
 
 Longchamp
 
 v.
 
 Fish,
 
 (2
 
 New. Rep.)
 
 is an authority directly in point against the objection in this case. It is not necessary that the will should be. read over in the presence of the subscribing witnesses. The statute requires the attestation of two witnesses to the execution of the will, and so far, they are indispensably requisite. But every other fact may be proved by other witnesses, as well as by them. Even their own attestation, if denied by themselves, may be shown by the testimony of others. So, if reading be necessary, may that be shown also.
 

 
 *293
 
 Another question has been made at the bar here, on which perhaps more can be said. It is, whether the reading of the will must not be proved in some way, supposing the testator to he blind, or that his sight was so decayed, that he could not himself read it. 1 do not know that we are at liberty to enter into that; both because there is a legal presumption, that the will was read to him; and because the point was not made below. It is clear, that if both subscribing witnesses were dead, the will would be well proved by proof of the handwriting of them and the testator. For after that event, the law takes every thing to have been duly done. Now altho’ one be living, and says tiiat it was not read in his presence, yet if it appear, that the one who is dead wrote the will; was alone with the testator just before the paper was signed ; that the testator was in his right mind, and that the draughtsman likew ise witnessed it, the legal presumption from these facts is, that it was read to the testator, before he signed it. Since
 
 Logan
 
 might have read it, since it was his duty to do it, since, in all human probability, no testator in his senses would fail to require, it to be read, the inference, from the experience of human conduct, is almost irresistible, that he did read it. As to a true reading, there can he no doubt. Fraud is never imputed without a motive, and evidence to show it. In this light the subject seems to have been viewred by the Counsel and the Court below. For, feeling that there was, in these legal and reasonable presumptions, abundant evidence that
 
 Logan
 
 had read the will, the
 
 cwvea-tors
 
 contended, that the will was not duly executed under the statute, because it had not been read in the presence of both subscribing witnesses. This was the point of the objection, and it is in reference to it, that the opinion of the Court was given and must he understood. If therefore the Judge laid down a proposition, which, ast an abstract proposition, may not be .critically correct, but is correct in the particular case, and with reference to the instruction prayed for, it would seem unfair to him
 
 *294
 
 atu] t0 the successful party before the Jury, to set aside the verdict. It is very different from an objection arising on the record itself; that is to say, the pleadings. They speak tiie same language every where, and contain all the allegations of the parties, and must be sufficient to sustaip the judgment in every Court. But of the viva
 
 voce
 
 proceedings at the trial, another Court can know only so much as is put down in the party’s exception, or the case stated ; and every thing found by the Jury, or ruled by the Court, ought to be held for right, unless it be complained of at the trial. If if he excepted to, it then distinctly appears ; if it be not, it must be presumed, that the party acquiesced under the conviction, that if he made objection, other par's of the charge or of the evidence would be given, which would remove his objection.
 
 (Rowe
 
 v. Power, 2
 
 Bos.
 
 &
 
 Pul. New. Rep.
 
 36). Here it is no part of the exception, that the Judge instructed the Jury, that the will need not be read to the testator. On the contrary, the instruction prayed for seems fo admit, and the Court, on that admission, to assume, that it had been read by
 
 ■Logan ;
 
 for the
 
 caveators
 
 contended, that the reading in the presence of one witness was an insufficient execution. But if we are at liberty to scan the charge of the Judge in all its parts, though there might be some doubts, yet 1 believe it is correct, as a general [imposition, that the execution of every written instrument, by every mail, having competent intellectual capacity, is evidence in jaw, that he knew its contents, and binds him. It is true, that
 
 Swinburne (vol.
 
 1
 
 ,p.
 
 166) does say, that
 
 “
 
 a blind man may make his testament in writing, provided the same be read before witnesses, and in their presence acknowledged by the testator for his will. But if a writing were delivered to the testator, and he, not hearing the same read, acknowledged the same for his will, this would not be sufficient; for it may be, that if he should hear the same read, he would not acknowledge the same for his will.” But this, I apprehend, is only
 
 *295
 
 a míe of the Chi3 Law, and adopted by
 
 Swinburne,
 
 as that of the Ecclesiastical Courts. It is certainly prudent and right to read the will, and to read it in the presence of witnesses; because it rebuts the imputation of fraud, of undue influence and incapacity. But the question is, whether it be indispensable, and whether the
 
 onus
 
 is on him who offers tiie will. I think there is no such rule in the Common Law of England. It is a mere question of fraud; arid the want of proof of the- reading does not destroy the will in the law'. It is clear, tiiat if a deed or other written contract be read falsely to a blind man, or to an illiterate man, even by a stranger, it avoids it. If it be not read, but one undertake to state its contents, and do it falsely, that likewise avoids it. But, says
 
 lord Coke,
 
 if the party who should deliver tiie deed, doth not require it to be read, he shall be bound by it, tho’ he be
 
 blind
 
 or illiterate.
 
 (Thoroughgood’s case, 2 Rep.
 
 9.
 
 Shulter’s case,
 
 12
 
 Rep.
 
 90.) The presumption is indeed, that every instrument is read by or to the maker, before its execution; because men seldom bind themselves by a contract, without taking the precaution, thro’ some friend able to read, and in whom the party has confidence, to have its contents communicated to him. Hence, in good sense, the fact of execution implies a knowledge of what the party is doing. If it be said, with
 
 Swinburne,
 
 tiiat if it were read, he might not like it, and refuse to acknowledge it — the answer is, that we have no more assurance that it would be truly read, than that it was truly written. And
 
 Lord Coke
 
 goes so far as to say, in the passage just quoted, that tiie deed is good, not only where it is presumed tiiat it was read, from the contrary not appearing, but that it is good where the contrary, doth actually appear. That it is a strong badge of fraud; an evidence of an overbearing influence over the maker of the deed in some quarter, or of the great imbecility of his mind, when he executes a writing of consequence, without asking for and having it read,, is very certain. And deeds have, under such circumstances, been set aside.
 
 *296
 
 (
 
 Bennet
 
 v.
 
 Vade,
 
 2
 
 Atk.
 
 326). But at last it is a question of fraud ; and here the whole matter of the testator’s capacity, and of imposition on him, was left to the Jury. j can gre n0 groui,(] f01. distinction between wills and instruments
 
 inter vivos,
 
 in this particular. That illiterate and blind men are liable to be imposed on, and that they are sometimes imposed on, cannot be dented. But not more so in making wills than other writings. At all events, they are allowed to make contracts and wills, without the law laying down any inflexible rule, that the validity of their acts depends upon its being proved, that they were read to them. The want of such proof is left, with other circumstances, to be weighed by the Jury, wiien fraud is imputed. We know in every day’s experience, that conveyances and bonds of men, who cannot read or write, are enforced uppn the bare proof of execution. So, I think, it is with a will, unless there be some ground laid by other evidence, to suspect imposition.
 

 Per Curiam. Judgment affirmed.