WALKER v. WALKER.

BOBBY JAMES WALKER, by his next friend, JONAH WALKER, PLAINTIFF, v. FRED LEE WALKER, DEFENDANT.

(Filed 11 April, 1962.)

**1. Automobiles § 49—**

Evidence that plaintiff passenger failed to remonstrate with defendant driver concerning his excessive speed, resulting in the accident and injury, *held* not to establish contributory negligence as a matter of law on the part of plaintiff.

**2. Insane Persons § 8;    Torts § 7—**

Evidence of plaintiff's mental incapacity to sign the release from liability executed by him *held* sufficient to take the issue to the jury.

**3. Appeal and Error § 35—**

Where the charge is not in the record, the denial of defendant's motion for special instructions cannot be held prejudicial.

APPEAL by defendant from *Fountain, S.J.,* November 27, 1961 Civil Term of PERSON.

This is a civil action to recover damages for personal injuries allegedly caused by the actionable negligence of defendant.

The complaint alleges in substance: Plaintiff is mentally incompetent and appears herein by his next friend. On 8 June 1960 he was a guest passenger in an automobile owned and being operated by defendant, his brother. Defendant entered a curve on N. C. Highway 49 at a speed of approximately 80 miles per hour and lost control. The car left the road, struck various objects, and was demolished. Plaintiff was thrown from the car and injured.

Defendant, answering, denies negligence on his part and alleges that plaintiff was contributorily negligent in that he remained in the car and failed to protest to defendant respecting the alleged excessive speed. Defendant also pleads in bar a settlement made with and release executed by plaintiff.

Plaintiff, replying, alleges that the purported release was obtained by duress and undue influence for a grossly inadequate consideration, and that plaintiff lacked sufficient mental capacity to execute a valid release.

The evidence favorable to plaintiff tends to show: Defendant was negligent as alleged and plaintiff's injuries were caused thereby. Plaintiff was frightened by the speed of the car but did not ask defendant, his brother, to reduce speed, for he thought his brother "knowed what he was doing." Plaintiff was 23 years old at the time. He has always lived with his parents. He has had cerebral palsy all his life, is nervous and has a speech impediment. He could learn very little in school and

can hardly read. His parents take care of him, handle his business affairs, make decisions and buy things for him. He makes no contracts without their signatures and has no conception of the value of money. Merchants do not sell him things without calling his father. He is like a child, and cannot do work requiring responsibility. He tried to get jobs but couldn't. He worked a short while under his brother's supervision at a chicken farm. For a long time he has received monthly Welfare payments as a disabled person. His parents endorse the checks. He has severe headaches and at times doesn't know what he is doing. He received a brain injury in the automobile accident and this aggravated his condition. The insurance adjuster talked to his father about a settlement. His father was planning to go to Canada for several weeks, and told the adjuster he wouldn't make a settlement, that plaintiff was not normal and he (the father) didn't want it settled until he returned from Canada, and that plaintiff wasn't capable of attending to that kind of business. While plaintiff's father was in Canada the adjuster made a settlement with and obtained a release from plaintiff. Plaintiff wanted an automobile. He had had his driver's license four years and had driven his father's car. The amount of the settlement was $1500. The adjuster paid the dealer $495 for a 1953 Pontiac and the title was put in the father's name. The adjuster paid medical and hospital bills and gave plaintiff a check for the balance — $461.35. The adjuster told the plaintiff $1500 was all he could get. Plaintiff signed the release, before a notary public, by "touching the pen." His mother was not present, but she signed the release when it was taken to her at the place she worked and when she was told $1500 was all plaintiff could get.

The jury answered the issues of mental capacity, negligence and contributory negligence agreeably to plaintiff's contentions and awarded $1250 damages. Judgment was entered in accordance with the verdict.

Defendant appeals.

*Haywood and Denny, George W. Miller, Jr., and R. B. Dawes, Sr., for plaintiff.*
*Charles B. Wood for defendant.*

PER CURIAM. Defendant concedes that plaintiff has made out a *prima facie* case of negligence on the defendant's part, but contends that plaintiff should have been nonsuited for that: (1) plaintiff was contributorily negligent as a matter of law, and (2) the evidence of plaintiff's mental incapacity is not sufficient to support a verdict on that issue.

The evidence tends to show that plaintiff ordinarily relied on members of his family for guidance, supervision and decisions. Under the circumstances of this case his failure to remonstrate with his brother for driving at an excessive speed raises, at most, an issue of contributory negligence for the jury. Contributory negligence as a matter of law does not appear. "Failure of a guest or passenger to remonstrate with the driver when the circumstances are such that a man of ordinary prudence would remonstrate is negligence, and may require the submission of the issue of the contributory negligence of the passenger to the jury, although it ordinarily will not be held to constitute contributory negligence as a matter of law." 1 Strong: N. C. Index, Automobiles, s. 49, p. 301; *Dinkins v. Carlton*, 255 N.C. 137, 120 S.E. 2d 543.

The issue of mental capacity was for the jury. There is more than a scintilla of evidence to support plaintiff's allegation that he lacked sufficient mental competence to execute a binding release. *Mangum v. Brown*, 200 N.C. 296, 156 S.E. 535.

The denial of defendant's motion for special instructions will not be held as error. The charge is not in the record. We have no way of knowing what the charge actually contained.

In the trial below we find

No error.