IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-105

No. COA20-337

Filed 6 April 2021

Chatham County, No. 17 CVS 921

JULIUS WILLIAM WOODY, and
SHANNON CHAD GAINES, Plaintiffs

v.

RANDY LYNN VICKREY,
individually and in his
capacities as Trustee of the
Julius William Woody Trust
and as Attorney-in-Fact
for Julius William Woody, Defendant and Third-Party Plaintiff

v.

CARRIE F. VICKREY, and
DONALD G. AYSCUE, Third-Party Defendants

Appeal by plaintiff and third-party defendants from orders entered 11 October

2019, and 4 November 2019, by Judges Carl R. Fox and Susan E. Bray in Chatham

County Superior Court. Heard in the Court of Appeals 27 January 2021.

*Coleman Gledhill Hargrave Merritt & Rainsford, P.C., by Cyrus Griswold, for*
*Plaintiff-Appellant and Third-Party Defendants-Appellants*

*Reiss & Nutt, PLLC, by W. Cory Reiss, for Defendant-Appellee*

CARPENTER, Judge.

¶ 1 Plaintiff Shannon Chad Gaines and Third-Party Defendants Carrie Vickrey and Donald Ayscue appeal from interlocutory orders including a declaratory judgment, an order on partial summary judgment, and a permanent injunction.

## I. Factual & Procedural Background

¶ 2 The evidence tends to show that on 22 July 2008, Julius William Woody ("Plaintiff Woody") appointed his long-time friend Randy Lynn Vickrey, defendant and third-party plaintiff ("Defendant Vickrey"), as trustee of a revocable trust. Plaintiff Woody executed a general warranty deed and a bill of sale to transfer real property and personal property into the trust.

¶ 3 In the spring of 2017, Carrie Vickrey ("Third-Party Defendant Vickrey"), Donald Ayscue ("Third-Party Defendant Ayscue"), and Shannon Chad Gaines ("Plaintiff Gaines") (collectively "Appellants") moved at least one trailer onto Plaintiff Woody's parcel and lived on his property. Friends and family members of Plaintiff Woody noticed a change in his home and living conditions after Appellants moved to the property: cameras and sensors were installed around the home, curtains remained closed, Plaintiff Woody became isolated, and his personal property went missing. They were also concerned about his mental and physical wellbeing as he

became increasingly feeble and susceptible to scams. Within one month after Appellants moved onto Plaintiff Woody's property, he executed multiple legal instruments including a revocation of the 2008 trust, a general power of attorney, a will, a certificate of trust, and general warranty deeds—all of which benefited one or more Appellants.

¶ 4        On 30 August 2017, Defendant Vickrey executed a certificate of trust to affirm his status as trustee of Plaintiff Woody's 2008 trust. To further protect the trust, he also transferred two parcels of land held by the trust to himself.

¶ 5        Plaintiffs Woody and Gaines filed a complaint in the Chatham County Superior Court against Defendant Vickrey on 22 November 2017, seeking to quiet title to the real property that Defendant Vickrey had transferred to himself. In Defendant Vickrey's answer to the initial complaint, he brought counterclaims including an action for declaratory judgment seeking the court to name him the trustee and sole beneficiary of Plaintiff Woody's trust, and a claim to quiet title to remove a 2017 deed executed by Plaintiff Woody. Defendant Vickrey also brought third-party claims against Third-Party Defendants Vickrey and Ayscue. These claims were for cancellation or rescission of certain documents signed by Plaintiff Woody in 2007 due to duress, undue influence, and lack of capacity; quiet title to remove a 2017 deed executed by Plaintiff Woody; punitive damages; injunctive relief; conversion; and civil conspiracy. All parties to the case prayed the court for a trial by jury.

¶ 6    Dr. George Corvin, a board-certified forensic psychiatrist, performed a mental examination on Plaintiff Woody in November of 2017 pursuant to court order. Dr. Corvin rendered an opinion with a "reasonable degree of medical certainty" that Plaintiff Woody lacked competence to sign the legal instruments executed in June of 2017 "in a knowing, voluntary, and intelligent manner." Defendant Vickrey filed his first motion for summary judgment on 10 January 2019, which was denied by presiding judge, the Honorable Allen Baddour, in an order (the "Baddour Order") entered pursuant to Rule 58 of the North Carolina Rules of Civil procedure on 10 February 2019. On 1 February 2019, Plaintiff Woody was granted leave to file, and filed, an amended and restated complaint, which brought claims against Defendant Vickrey relating to his alleged breach of fiduciary duties. Defendant Vickrey answered the amended and restated complaint and amended his counterclaims on 22 February 2019.

¶ 7    Defendant Vickrey filed a second motion for summary judgment on 18 September 2019 based on the amended pleadings. On 10 October 2019, the presiding judge, the Honorable Carl Fox, entered an order (the "Fox Order") granting declaratory judgment designating Defendant Vickrey as the trustee and sole beneficiary of Plaintiff Woody's trust. In his order, Judge Fox granted summary judgment in favor of Defendant Vickrey on the parties' claims for quiet title and conversion. He also granted summary judgment in favor of Defendant Vickrey on his

third-party claim for cancellation and recission of the 2017 instruments. Finally, Judge Fox denied summary judgment regarding Defendant Vickrey's third-party claim for civil conspiracy.

Plaintiff Woody voluntarily dismissed his other claims, without prejudice on 22 October 2019. Defendant Vickrey moved for a preliminary injunction on 7 September 2018 to prevent the transfer of assets from the 2008 trust, which the court granted on 1 November 2018.

A permanent injunction was entered on 4 November 2019, by the presiding judge, the Honorable Susan Bray, to enjoin Plaintiff Gaines and Third-Party Defendants Vickrey and Ayscue from communicating with Plaintiff Woody and from entering his property. The only remaining unresolved claim in the proceeding is Defendant Vickrey's counterclaim for civil conspiracy.

Appellants filed their notice of appeal to the Court of Appeals from the Fox Order and the permanent injunction. The trial court proceedings for this matter were stayed pursuant to N.C. Gen. Stat. § 1-294 until this Court issues its opinion.

## II. Issues

The issues are whether: (1) Appellants have shown harm to a substantial right sufficient to warrant an immediate appeal from interlocutory orders, which removed the preliminary factual determinations of undue influence and lack of mental capacity from a jury; (2) the trial court properly granted summary judgment in favor

of Defendant Vickrey after a motion for summary judgment had been previously denied; (3) the trial court properly granted partial summary judgment, which effectively resolved the critical preliminary factual issues of undue influence and lack of capacity; (4) the trial court properly issued a permanent injunction before a final hearing on the merits; and (5) the trial court properly granted summary judgment on Defendant Vickrey's counterclaim for conversion in the partial summary judgment order.

## III. Jurisdiction

### A. Interlocutory Appeal

As an initial matter, this Court must determine whether it possesses jurisdiction over the interlocutory appeal of the declaratory judgment, partial summary judgment, and permanent injunction. All parties agree that the orders from which Appellants appeal are interlocutory.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (citation omitted).

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, "[t]here are . . . two means by which an interlocutory order may be appealed: (1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C.R. Civ. P. 54(b) or (2) if the trial court's decision deprives the appellant of a substantial right . . . ." *CBP Resources, Inc. v. Mountaire Farms, Inc.*, 134 N.C. App. 169, 171, 517 S.E.2d 151, 153 (1999) (quotations omitted). An appellant's substantial right is deprived if it is "lost, prejudiced or [will] be less than adequately protected" without an immediate appeal pursuant to N.C. Gen. Stat. §§ 1-277(a) or 7A-27(b)(3)(a). *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 6, 362 S.E.2d 812, 815 (1987).

¶ 14      In this case, the trial court's judgment was final as to some but not all of the claims; however, the trial court did not certify the order so there is no immediate appeal authorized under Rule 54(b). In order for the Appellants to have a right of appeal, the trial court must have deprived Appellants of a substantial right that would be lost, prejudiced, or less than adequately protected absent immediate review. *See J & B Slurry Seal Co.*, 88 N.C. App. at 6, 362 S.E.2d at 815. Appellants contend that their substantial rights are prejudiced, including: (1) the right to not receive inconsistent verdicts in two potential trials; and (2) the right to have a jury determine

all factual issues where a genuine issue of material fact exists.

### 1. Inconsistent Verdicts

We first consider Appellants' argument that the interlocutory orders affect their right to not receive inconsistent verdicts. Appellants argue in their statement of grounds for appellate review: "In a trial limited to Appellee's remaining claims, a jury could find Appellants not liable. If the summary judgment at issue here were then reversed on appeal, a second jury could find Appellants liable on those same claims."

Rule 28(b)(4) of the North Carolina Rules of Appellate Procedure requires that an appellant's brief include, *inter alia*:

> A statement of the grounds for appellate review. Such statement shall include citation of the statute or statutes permitting appellate review. . . . When an appeal is interlocutory, the statement must contain sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right.

N.C. R. App. P. 28(b)(4). The burden is on the appellant to explain in the statement of the grounds for appellate review "why the facts of that particular case demonstrate that the challenged order affects a substantial right." *Denney v. Wardson Constr., LLC*, 264 N.C. App. 15, 18, 824 S.E2d 436, 438 (2019).

A party's right to avoid separate trials of the same factual issues may constitute a substantial right. *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d

593, 596 (1982). To determine whether a substantial right exists, "[t]his Court has interpreted the language of *Green* and its progeny as creating a two-part test requiring that a party show that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 735–36, 460 S.E.2d 332, 335 (1995) (citation omitted). "The test is satisfied when overlapping issues of fact between decided claims and those remaining create the possibility of inconsistent verdicts from separate trials." *Newcomb v. Cty. of Carteret*, 183 N.C. App. 142, 145, 643 S.E.2d 669, 671 (2007), *disc. rev. denied*, 365 N.C. 212, 710 S.E.2d 26 (2011) (citations omitted). "The mere fact that claims arise from a single event, transaction, or occurrence does not, without more, necessitate a conclusion that inconsistent verdicts may occur unless all of the affected claims are considered in a single proceeding." *Hamilton v. Mortg. Info. Servs.*, 212 N.C. App. 73, 80, 711 S.E.2d 185, 190 (2011) (citation omitted). The risk of inconsistent verdicts means that there is "a risk that different fact-finders would reach irreconcilable results when examining the same factual issues a second time." *Denney*, 264 N.C. App. at 19, 824 S.E2d at 439.

¶ 18    This Court has held the risk of inconsistent verdicts is not present when the issue of liability has been determined and only damages claims remain for a trial court's consideration. *See, e.g., Tridyn Indus., Inc. v. Am. Mut. Ins. Co.*, 296 N.C. 486, 251 S.E.2d 443 (1979). Therefore, when only claims for damages remain, there is no

substantial right affected which warrants immediate appeal. *CBP Resources, Inc.*, 134 N.C. App. at 172, 517 S.E.2d at 154. Our Supreme Court has stated that a civil action for conspiracy is an action for damages:

> Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof -- the damage -- not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable.

*Reid v. Holden*, 242 N.C. 408, 414–15, 88 S.E.2d 125, 130 (1955) (quoting 11 Am. Jur. 577, Conspiracy § 45).

¶ 19        Here, issues of liability were determined by the trial court, and the only claim remaining for consideration is a claim for civil conspiracy, or a claim for damages. Therefore, Appellants have not identified in their statement of grounds for appellate review a risk of inconsistent verdicts. *See CBP Resources, Inc.*, 134 N.C. App. at 172, 517 S.E.2d at 154. Moreover, Appellants have not put forth sufficient facts and argument to show how irreconcilable verdicts would arise if a fact finder determined the remaining claim, and the order on partial summary judgment was subsequently reversed. *See Union Cty. v. Town of Marshville*, 255 N.C. App. 441, 446–47, 804 S.E.2d 801, 805–06 (2017); N.C. R. App. P. 28(b)(4). In considering Appellants'

hypothetical, we do not find that inconsistent verdicts would arise if a jury found them not liable on the remaining claim for civil conspiracy, the summary judgment was reversed, and a second jury found them liable on the other claims.

## 2. Right to Trial by Jury

¶ 20 We next consider Appellants' argument that an immediate appeal from the interlocutory orders is necessary to protect their substantial right to a trial by jury because all parties to the suit prayed the court for a jury on all triable issues, and Appellants did not waive this right at any time.

¶ 21 In order to exercise the right to a jury trial in North Carolina, a party must meet certain constitutional and statutory requirements. The North Carolina Constitution provides a right to a jury trial "[i]n all [civil] controversies at law respecting property . . . ." N.C. Const. art. I, § 25 ("[T]he ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable."). Our Court has found "the right to a jury trial is a substantial right of great significance." *Mathias v. Brumsey*, 27 N.C. App. 558, 560, 219 S.E.2d 646, 647 (1975), *disc. rev. denied*, 289 N.C. 140, 220 S.E.2d 798 (1976). However, "[t]he constitutional right to trial by jury, N.C. Const., Art. I, § 25, is not absolute; rather, it is premised upon a preliminary determination by the trial judge that there indeed exist genuine issues of fact and credibility which require submission to the jury." *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 537, 256 S.E.2d 388, 396 (1979).

¶ 22        In *N.C. State Bar v. Du Mont*, our Supreme Court interpreted "Article I, § 25 of the North Carolina Constitution [as] preserv[ing ] intact the right to trial by jury in all cases where the [action] existed at common law or by statute at the time the 1868 Constitution was adopted." 304 N.C. 627, 641, 286 S.E.2d 89, 98 (1982). "If the action existed at the time of the adoption of the 1868 Constitution, then the court [must] 'determine[ ] whether the remedy sought is one at law respecting property.'" *Kiell v. Kiell*, 179 N.C. App. 396, 400, 633 S.E.2d 827, 830 (2006) (quoting *State ex rel. Rhodes v. Simpson*, 325 N.C. 514, 518, 385 S.E.2d 329, 332 (1989)). In *Kiell*, our Court stated that "when the issues upon which a jury trial is sought 'form no part of the ultimate relief sought [and] do not affect the final rights of the parties,' then 'the power of the judge to make them is constitutionally exercised without the intervention of the jury.'" *Kiell*, 179 N.C. App. at 401, 633 S.E.2d at 830 (quoting *Peele v. Peele*, 216 N.C. 298, 300, 4 S.E.2d 616, 618 (1939)).

¶ 23        Here, each property claim at issue, including a quiet title action, a petition for declaratory judgment designating a trust's trustee and beneficiary, a claim for conversion, and the nullification of legal instruments relating to property, "existed at common law or by statute at the time the 1868 Constitution was adopted." *See N.C. State Bar*, 304 N.C. at 641, 286 S.E.2d at 98; *see, e.g., Suanderson v. Ballance*, 55 N.C. 322 (2 Jones Eq.) (1856) (reviewing a quiet title action and holding the plaintiff was entitled to "mak[e] his title good"); *Goodrum v. Goodrum*, 43 N.C. 313 (8 Ired. Eq.)

(1852) (plaintiff sought a declaratory judgment that her slaves were separate property from her husband's); *Nichols v. Newsom*, 6 N.C. 302 (2 Mur.) (1813) (defining conversion as "wrongfully turning to one's use the personal goods of another, or doing some wrongful act inconsistent with or in opposition to the right of the owner"); *Millison v. Nicholson*, 1 N.C. 612 (1 Cam. & Nor.) (discussing the validity of an executed deed when mental capacity of the grantor was at issue); *Hemphill v. Hemphill*, 13 N.C. 291 (1 Dev.) (stating that when there is proof of undue influence exerted upon an individual executing a contract or a will, the weight of the evidence is to be determined by a jury). Therefore, as long as a genuine issue of a material fact exists with respect to a claim, the parties have a constitutional right to a jury trial on that civil claim. *See N.C. Nat'l Bank*, 297 N.C. at 537, 256 S.E.2d at 396.

¶ 24    In this case, the remedies sought by the parties are declaratory relief, damages, and a decree naming certain conveyance instruments void. Each "remedy sought is one at law respecting property." *See Kiell*, 179 N.C. App. at 400, 633 S.E.2d at 830. The issues for which a jury is sought include the preliminary issues of mental incapacity and undue influence as well as the disputed claims of conversion and quiet title. Genuine issues of fact exist with respect to the issues of whether Plaintiff Woody is mentally competent and whether he was unduly influenced. These issues are in the province of a jury and must be determined before the ultimate issues of the quiet title action, the declaratory judgment regarding the trust, and the validity of

legal instruments may be resolved. Thus, the issues upon which a jury trial is sought "form [*some*] part of the ultimate relief sought [and] . . . affect the final rights of the parties." *See id.* at 401, 633 S.E.2d at 830 (emphasis added). Unlike *Kiell,* where a jury was directed on only the preliminary issues and not on the ultimate merits of the underlying claims, the jury in this case would be directed to decide both preliminary issues of mental capacity and undue influence, and the ultimate merits of the underlying claims for quiet title, conversion, nullification of documents, as well as a declaratory judgment regarding a trust—all of which respect property. *See id.* at 401, 633 S.E.2d at 830. Thus, the final rights of the parties are affected. *See id.* at 401, 633 S.E.2d at 830. Therefore, Appellants in the case *sub judice* have satisfied the test to establish their constitutional right to a trial by jury under Article I, § 25.

¶ 25        Along with satisfying constitutional mandates, a party must meet statutory requirements to exercise the right of a jury trial. Rule 38 of the North Carolina Rules of Civil Procedure establishes the manner by which a party must request a jury trial:

> (b) Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be made in the pleading of the party or endorsed on the pleading.
>
> . . . .
>
> (d) . . . A demand for trial by jury . . . may not be withdrawn

> without the consent of the parties who have pleaded or
> otherwise appear in the action.

N.C. Gen. Stat. § 1A-1, Rule 38(b), (d) (2019). Pursuant to Rule 39, "[w]hen trial by jury has been demanded and has not been withdrawn as provided in Rule 38, the action shall be designated upon the docket as a jury action." N.C. Gen. Stat. § 1A-1, Rule 39(a) (2019). The trial shall be by jury for all triable issues in which it has been demanded unless the parties, by stipulation, consent to a trial without a jury or the court finds that there is no constitutional or statutory right to a trial by jury. *Id.*

¶ 26 In this case, each party to the suit demanded a jury trial pursuant to Rule 38(b), and their right was not withdrawn at any point in the action under Rule 38(d). Therefore, the action should have been designated upon the docket as a jury action on these triable issues pursuant to Rule 39(a).

¶ 27 *Ayscue v. Griffin* is instructive on the issue of whether the trial court prejudiced Appellants' constitutional and statutory rights to a jury trial. 263 N.C. App. 1, 823 S.E.2d 134 (2018). In *Ayscue*, this Court granted an interlocutory appeal after the trial court improperly deprived a party of its right to a jury trial on a "critical preliminary issue," the location of a disputed property boundary line. *Id.* at 9, 823 S.E.2d at 140. We held that the location of the boundary line was a factual question, and the plaintiffs had a constitutional and statutory right to a jury trial that was not

waived; therefore, the trial court improperly relied upon a witness's opinion in issuing its orders rather than having the question heard before a jury. *Id.* at 9, 823 S.E.2d at 140. The orders "effectively mooted and resolved" the plaintiffs' claims and "denied and deprived" them of their right to a jury trial. *Id.* at 9, 823 S.E.2d at 140. Accordingly, we vacated the order, and the matter was remanded for a jury trial on all triable issues. *Id.* at 14, 823 S.E.2d at 143.

¶ 28 Here, the Fox Order "effectively . . . resolved" the claims before the court and "denied and deprived" Appellants of a jury trial on the factual issues of undue influence and lack of mental capacity. *See Ayscue*, 263 N.C. App. at 9, 823 S.E.2d at 140. Appellants' right to a jury determination of all triable issues constitutes a substantial right. *Id.* at 9, 823 S.E.2d at 140. The issues of undue influence and mental capacity in the context of this case are critical and material issues of fact for the jury to determine; however, the court resolved these factual issues as a matter of law by granting a declaratory judgment and an order for partial summary judgment in favor of Defendant Vickrey. *See Walker v. Walker*, 256 N.C. 696, 698, 124 S.E.2d 807, 808 (1962) (stating the issue of mental capacity is one for a jury); *In re Will of Andrews*, 299 N.C. 52, 56, 261 S.E.2d 198, 200 (1980) (stating that once a *prima facie* case of undue influence has been presented, the "case must be submitted to the jury for its decision"). Appellants' right to a jury determination of these issues would be prejudiced without our immediate review because nearly all parties' claims, including

an undecided claim of conspiracy, rest on the determination of whether there was undue influence and whether Plaintiff Woody lacked capacity.

¶ 29     Finally, North Carolina courts have recognized that an "order denying [a party's] motion for a jury trial is appealable." *In re McCarroll*, 313 N.C. 315, 316, 327 S.E.2d 880, 881 (1985) (citation omitted); *see In re Ferguson*, 50 N.C. App. 681, 274 S.E.2d 879 (1981). By the same token, a court order that effectively denies a party's constitutional and statutory right to a jury trial is appealable. *See Faircloth v. Beard*, 320 N.C. 505, 507, 358 S.E.2d 512, 514 (1987) (holding that "an order requiring a jury trial" is appealable since "an order denying [a party's motion to] a jury trial is appealable").

¶ 30     Appellants have met North Carolina's constitutional and statutory requirements to exercise their right to a jury trial in the instant action. Accordingly, their substantial right to a jury was prejudiced by the Fox Order. This Court holds Appellants have an immediate right to appeal.

## IV. Jurisdiction for Summary Judgment

### A. Standard of Review

¶ 31     We review questions of subject-matter jurisdiction *de novo*. *In re K.A.D.*, 187 N.C. App. 502, 503, 653 S.E.2d 427, 428 (2007) (citation omitted).

### B. Analysis

¶ 32    Appellants contend the grant of partial summary judgment entered by Judge Fox was improper because Judge Baddour had previously denied an initial motion for summary judgment.

¶ 33    We acknowledge the well-established rule in North Carolina that "no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972) (citations omitted).  In this case, the Baddour Order recognizing that issues of material fact existed, addressed summary judgment on the original complaint. However, Plaintiff Woody had been granted leave of the Court and had filed an amended and restated complaint six days prior to the Baddour Order being entered pursuant to Rule 58 of the North Carolina Rules of Civil Procedure.  "[A]n amended complaint has the effect of superseding the original complaint." *Hyder v. Dergance*, 76 N.C. App. 317, 319–20, 332 S.E.2d 713, 714 (1985) (citation omitted).  Thus, the filing of the amended and restated complaint rendered any arguments regarding the original complaint moot, including a motion for summary judgment on the original complaint. *See Houston v. Tillman*, 234 N.C. App. 691, 695, 760 S.E.2d 18, 20 (2014).  Therefore, this Court holds the trial court had jurisdiction to address

the subsequent motion for summary judgment on the amended and restated complaint addressed by the Fox Order.

## V. Critical Preliminary Factual Issues

### A. Standard of Review

We review *de novo* the issues of the trial court's Fox Order granting partial summary judgment on critical and material issues of fact and effectively denying Appellants the right to a trial by jury. *Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated.").

### B. Mental Incapacity

Appellants argue Dr. Corvin applied an incorrect standard for determining Plaintiff Woody's testamentary capacity and contractual capacity.

The correct standard for testamentary capacity in North Carolina is the individual: "(1) comprehends the natural objects of h[is] bounty, (2) understands the kind, nature and extent of h[is] property, (3) knows the manner in which [ ]he desires h[is] act to take effect, and (4) realizes the effect h[is] act will have upon h[is] estate." *In re Will of McNeil*, 230 N.C. App. 241, 249, 749 S.E.2d 499, 505 (2013). The capacity required to execute a deed includes: (1) understanding the nature and consequences of making a deed; (2) comprehending its scope and effect; and (3) knowing what land he is disposing of and to whom and how. *Hendricks v. Hendricks*, 273 N.C. 733, 734,

161 S.E.2d 97, 98 (1968).  Finally, for other contracts, a person has sufficient mental capacity if he has "the ability to understand the nature of the act in which he is engaged and its scope and effect . . . ."  *Sprinkle v. Wellborn*, 140 N.C. 163, 181, 52 S.E. 666, 672 (1905).

¶ 37        Dr. Corvin used the standard of "knowingly, voluntarily, and intelligently" to determine testamentary and contractual capacity in his opinion of Plaintiff Woody's mental state.  This standard was also cited by the trial court in the Fox Order, where it concluded Plaintiff Woody lacked capacity to execute legal instruments in 2017. The "knowingly, voluntarily, and intelligently" standard is normally applied in the waiver of rights in the context of criminal matters.  *See State v. Baker*, 312 N.C. 34, 320 S.E.2d 670 (1984).  Not only were improper standards for mental capacity used, but the court's adoption of Dr. Corvin's opinion effectively resolved critical issues of fact arising from the claims addressed in the Fox Order, denying and depriving Appellants of their right to have a jury determine those issues of fact.  *See Walker*, 256 N.C. at 698, 124 S.E.2d at 808.  Therefore, this Court holds the trial court improperly granted partial summary judgment because mental capacity was a critical preliminary factual issue for a jury.

## C. Undue Influence

¶ 38        Appellants further argue that summary judgment was inappropriate on the underlying issue of undue influence because it was question of fact for a jury.

¶ 39 On appeal and at the hearing for summary judgment, Defendant Vickrey improperly relied on the case of *Leonard v. England* for the proposition that providing "a 'competent and unchallenged' expert opinion that a person lacked necessary capacity . . . is grounds for summary judgment on that issue." *See Leonard v. England*, 115 N.C. App. 103, 445 S.E.2d 50 (1994), *disc. rev. vacated and denied*, 340 N.C. 113, 455 S.E.2d 663 (1995). Defendant Vickrey does not raise, nor do we find, one case in which summary judgment was granted on the issue of undue influence after a *prima facie* case had been presented before a court. Our Supreme Court has stated that once a *prima facie* case of undue influence has been presented by a party, "the case must be submitted to the jury for its decision." *In re Will of Andrews*, 299 N.C. at 56, 261 S.E.2d at 200.

¶ 40 The petition for declaratory judgment as well as the claims for quiet title and rescission and cancellation of instruments rely on the critical and material factual issues of undue influence and lack of capacity, which were improperly determined as a matter of law by the trial court; therefore, the declaratory judgment and partial summary judgment orders on these claims are vacated.

## VI. Permanent Injunction

### A. <u>Standard of Review</u>

¶ 41 "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d

590, 592 (2010) (citation omitted) (emphasis added).

### B. <u>Analysis</u>

¶ 42    Appellants argue that the trial court lacked jurisdiction to issue a permanent injunction before the full case had been heard on its merits.

¶ 43    A trial court lacks authority to issue "the extreme remedy of a permanent injunction" before the final trial of the action. *Cty. of Johnston v. City of Wilson*, 136 N.C. App. 775, 781, 525 S.E.2d 826, 830 (2000); *see Shishko v. Whitely*, 64 N.C. App. 668, 308 S.E.2d 448 (1983).

¶ 44    In contrast to a permanent injunction, a preliminary injunction, is:

> an interlocutory injunction issued after notice and hearing which restrains a party pending trial on the merits. The issuing court, after weighing the equities, and the advantages and disadvantages to the parties, determines in its sound discretion whether an interlocutory injunction should be granted or refused. The court cannot go further and determine the final rights of the parties, which must be reserved for the final trial of the action.

*Cty. of Johnston*, 136 N.C. App. at 780, 525 S.E.2d at 829–30 (citations and quotations omitted).

¶ 45    Here, it was improper for the trial court to grant the "extreme remedy of a permanent injunction" because it "determine[d] the final rights of the parties" before the "final trial of the action." *See id.* at 780–81, 525 S.E.2d at 829–30. Therefore, the permanent injunction is vacated.

**VII. Conversion Claim**

A. <u>Standard of Review</u>

¶ 46    "Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523–24, 649 S.E.2d 382, 385 (2007)) (emphasis added).

B. <u>Analysis</u>

¶ 47    Lastly, we address Appellants' contention that the trial court erred in granting summary judgment on the conversion claim because genuine issues of material fact were present.

¶ 48    The tort of conversion is defined in North Carolina as the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Myers v. Catoe Constr. Co.*, 80 N.C. App. 692, 695, 343 S.E.2d 281, 283 (1986).

¶ 49    Appellants concede Defendant Vickrey owned vehicles and hunting equipment located on Plaintiff Woody's parcel prior to August of 2017, and further concede the personal property was removed. Appellants argue, however, Plaintiff Vickrey failed to distinguish between Appellants in his counterclaim with respect to who had wrongfully exercised ownership over his property. Moreover, they contend Defendant

Vickrey received notice to remove his property and failed to do so, thereby abandoning it.

¶ 50    The evidence tends to show a receipt from NC Recycling for automobile and steel shredding dated 14 August 2017 and signed by Plaintiff Woody. The record also contains a letter signed by Plaintiff Woody and Plaintiff Gaines dated 19 August 2017, addressed to Defendant Vickrey, informing him to remove his vehicles and hunting equipment from Plaintiff Woody's property before 8 September 2017. As Defendant Vickrey has properly raised, the demand letter is dated five days after the receipt, which shows the vehicles and steel were recycled. Appellants did not provide any additional evidence to prove that the vehicles were not disposed of before the demand letter was delivered to Defendant Vickrey. Based on the evidence, Plaintiffs Woody and Gaines assumed and exercised the right of ownership over Defendant Vickrey's personal property without his authorization and disposed of it. *See Myers*, 80 N.C. App. at 695, 343 S.E.2d at 283. However, in Defendant Vickrey's counterclaim, he asserts that the "Conspiring Parties," or Appellants, are liable for conversion of his personal property. The Fox Order granted summary judgment for Defendant Vickrey on his claim for conversion, and only Third-Party Defendants Carrie Vickrey and Ayscue were found to have "wrongfully exercised ownership" over the property. Given that the evidence tends to show Plaintiffs Gaines and Woody took part in disposing of Defendant Vickrey's property, there is a genuine issue of

material fact as to who had exercised ownership and control over Defendant Vickrey's property; thus, summary judgment was not appropriate. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 524–25, 723 S.E.2d 744, 748 (2012) (holding that a question of contractual intent was a genuine issue of material fact that precluded summary judgment).

¶ 51        Furthermore, given that the trial court granted summary judgment on the conversion claims, it erred by not also granting summary judgment on the conspiracy claim since there was no genuine of issue of material fact for a jury to determine once the conversion claims were decided. The trial court's improper grant of partial summary judgment on the conversion claims had the effect of eliminating a genuine issue of material fact as to the civil conspiracy claim because the liability of the parties was already decided, and the civil conspiracy claim would only determine damages. Thus, Appellants' right to a jury trial was prejudiced when the trial court ordered partial summary judgment on the conversion claims. For the foregoing reasons, the order on partial summary judgment with respect to the conversion claims is vacated.

## VIII. Conclusion

¶ 52        This Court has jurisdiction to address the merits of Appellants' interlocutory appeal. Appellants have shown that their substantial right to a jury trial was prejudiced because the trial court improperly deprived Appellants of their right to a

jury trial on the critical preliminary factual issues of undue influence and lack of mental capacity. To the extent the Fox Order was based on these critical preliminary issues, it is vacated.

¶ 53        Appellants have shown a genuine issue of material fact exists with respect to the liable parties of the conversion claims decided in the Fox Order, and this improper grant of summary judgment also eliminated any existing genuine issues of material fact with respect to the undecided civil conspiracy claim; therefore, this Court vacates this portion of the Fox Order.

¶ 54        The permanent injunction was improper because it determined the final rights of the parties before a hearing on the merits had been held.

¶ 55        Accordingly, this Court vacates the permanent injunction; declaratory judgment regarding the trust; and partial summary judgment regarding the cancellation and rescission, quiet title, and conversion claims, and this Court remands to the trial court for further proceedings and for a jury trial on all triable issues. *It is so ordered.*

        VACATED IN PART AND REMANDED.

        Judge HAMPSON concurs in result with separate opinion.

        Judge JACKSON dissents with separate opinion.

No. COA20-337 – *Woody v. Vickrey*

HAMPSON, Judge, concurring in result.

I agree the trial court's Orders granting partial summary judgment and entering a permanent injunction must be vacated and this matter remanded for further proceedings and, as such, concur in the result. I differ, however, both in (I) the articulation of a substantial right permitting an immediate appeal of these interlocutory Orders and (II) the analysis on the merits as it relates to whether summary judgment was proper on the claims arising from the allegations of undue influence and, in turn, the issuance of the permanent injunction.[1]

I.

This case provides an excellent illustration that "[t]he 'substantial right' test for appealability is more easily stated than applied." *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) (citations omitted). Indeed, articulating a generally applicable substantial right in any given case can be challenging at best. Thus, as our Supreme Court has cautioned: "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Id.* (citations and quotation marks omitted). Hence, as our Court summarized: "Whether

[1] To be clear, I fully agree with the Opinion of the Court in Parts IV and VII addressing the trial court's jurisdiction to consider Summary Judgment and the grant of Summary Judgment on the Conversion counterclaim.

an interlocutory appeal affects a substantial right is determined on a case-by-case basis." *Grant v. High Point Reg'l Health Sys.*, 172 N.C. App. 852, 853, 616 S.E.2d 688, 689 (2005) (citation omitted). Here, the "case-by-case" approach is particularly applicable.

¶ 58    We are unanimous in agreeing Appellants have failed to articulate a substantial right arising from the possibility of inconsistent verdicts. Moreover, I agree with the dissent that the trial court's grant of partial summary judgment in and of itself does not affect a substantial right to a jury trial pertaining to the Appellants' property rights. However, the trial court's partial Summary Judgment Order does directly and materially impact title to property—and, specifically, finally determines a threshold question in this case necessary to resolve the remaining claims: Who properly holds title to the property at issue?

¶ 59    Here, the trial court's partial Summary Judgment Order decides that threshold question and, then, goes further by ordering:

> All instruments executed by Plaintiff Woody in 2017 are *void, rescinded, and ordered stricken* from the records of the Chatham County Register of Deeds and title to the property is established consistent with the General Warranty Deed recorded by Defendant Vickrey on 30 August 2017, subject to a constructive trust in favor of Plaintiff Woody until his death.

In addition, the trial court's subsequent, permanent injunction permanently bars Appellants from any access to the property and from Mr. Woody, including in advance

of a trial on the remaining merits. Further, on the particular facts and procedural context of this case, time is of the essence because it involves the estate of a person who is still alive and, thus, may still have the ability to amend and alter his estate, participate in ongoing litigation, and who is still a party to this case. The efficacy of reaching the merits in this particular case is further underscored by the fact the trial court, purportedly applying N.C. Gen. Stat. § 1-294, has stayed any further proceedings pending this appeal.

¶ 60   Under the current state of our caselaw, "outside of the condemnation context, the fact that an interlocutory appeal may affect title to land does not automatically render an interlocutory appeal permissible. The appellant must still demonstrate that the particular order, if not addressed prior to a final judgment, would adversely affect a substantial right of the appellant." *Superior Constr. Corp. v. Intracoastal Living, LLC*, 207 N.C. App. 750, 701 S.E.2d 403 (2010) (unpublished). This may be done by a showing: "Resolution of the remaining claims could not move forward until the question of who held title to the property was finally decided and, therefore, a substantial right was at stake." *Id.* Here, the central threshold question is who held title to the property and absent final resolution of that question, the remaining questions are left for decision. The trial court's partial Summary Judgment Order, and particularly in combination with the permanent injunction barring Appellants from the property, finally resolves the issue of title to the property and, moreover,

impairs the property rights of Appellants in a manner such that they are prejudiced resulting in immediate harm, which could not be cured by a later appeal. That is, their alleged title to the property is immediately stricken from the public record and they are barred from entering their alleged property or contacting Mr. Woody while still in the course of litigation. As such, in the interests of justice, I would conclude on the specific facts of this case that Appellants do have a right to a permissive interlocutory appeal under the substantial right doctrine.

## II.

Next, I would vacate the trial court's partial Summary Judgment Order on the claims for declaratory judgment, quiet title, and rescission and cancellation of instrument arising from undue influence and lack of mental capacity. Each side presented sufficient evidence to create a genuine issue of material fact on the key question of Mr. Woody's competence at the time of the property transfers in question and, in turn, whether Mr. Woody was coerced to execute documents and transfer property by Appellants' undue influence.

Here, Defendant proffered the expert opinion of Dr. Corvin in support of summary judgment. I agree with the lead opinion that Defendant's reliance on *Leonard v. England*, 115 N.C. App. 103, 445 S.E.2d 50 (1994), is misplaced. *Leonard* stands for the proposition that summary judgment for a defendant was not proper on statute-of-limitations grounds where uncontradicted expert medical evidence showed

the plaintiff was incompetent as defined by N.C. Gen. Stat. § 35A-1101(7) at the time the action accrued, and thus the statute of limitations was tolled. *Id.* at 107-108, 445 S.E.2d at 52.

¶ 63          It does not stand for the broad proposition Defendant advocates—that in order to defeat summary judgment on the issue of testamentary capacity and the existence of undue influence, the non-moving party *must* present expert testimony to rebut a movant's expert. Here, while Dr. Corvin's testimony is evidence tending to call into question Mr. Woody's capacity to execute legal documents at the time in question, it does not compel summary judgment in Defendant's favor. Appellants presented contradictory evidence in the form of witness testimony of people who observed Mr. Woody first-hand, including the attorney present when Mr. Woody executed the revocation of power of attorney and other acquaintances of Mr. Woody as to their observations of Mr. Woody's mental state during the time in question. Indeed, even Dr. Corvin acknowledged he could not determine a precise time when Mr. Woody's testamentary incapacity began, his opinion was, at least in part, reliant on the credibility of the information and contemporaneous accounts provided to him, and that his opinion was subject to disagreement, even going so far as to note "another trier of fact can look at these set of facts and disagree with me."

¶ 64          Consequently, because there is a genuine issue of material fact on the question of Mr. Woody's competency to execute legal documents, partial summary judgment

on these issues was erroneous and must be vacated. Moreover, because the partial Summary Judgment Order was erroneously entered, the permanent injunction entered as a result must also necessarily be vacated, and I would not reach the issue of whether entry of the permanent injunction was premature. Accordingly, I concur in the result reached in the Opinion of the Court vacating those Orders and remanding the case for trial.

JACKSON, Judge, dissenting.

Appellants raised two grounds for interlocutory appeal: (1) the right to not receive inconsistent verdicts in two potential trials; and (2) the right to have a jury determine all issues of fact. While I agree with the majority finding that the interlocutory orders do not affect Appellants' right to receive consistent verdicts, I cannot agree with its determination that Appellants' right to a jury trial was prejudiced. Because I believe Appellants' right to a jury trial was not prejudiced and Appellants therefore failed to show how denial of this interlocutory appeal would affect a substantial right, I respectfully dissent.

As the majority explains, for Appellants to have a right of appeal, "the trial court must have deprived Appellants of a substantial right that would be lost, prejudiced, or less than adequately protected absent immediate review." Our Court has recognized that "[t]he right to a jury trial is a substantial right of great significance." *Mathias v. Brumsey*, 27 N.C. App. 558, 560, 219 S.E.2d 646, 647 (1975), *disc. review denied*, 289 N.C. 140, 220 S.E.2d 798 (1976). However, "[t]he appealing party [still] bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature[,]" due to loss, prejudice, or inadequate protection of their right to trial. *Union Cty. v. Town of Marshville*, 255 N.C. App. 441, 444, 804 S.E.2d 801, 804 (2017) (citation omitted).

¶ 67    The North Carolina Constitution provides that the right to a jury trial should be preserved "[i]n all [civil] controversies at law respecting property[,]" N.C. Const. art. I, § 25, however, our Supreme Court has explained that "[t]he constitutional right to trial by jury, N.C. Const., Art. I, § 25, is not absolute; rather, it is premised upon a preliminary determination by the trial judge that there indeed exist genuine issues of fact and credibility which require submission to the jury." *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 537, 256 S.E.2d 388, 396 (1979). Thus, trial judges act as gatekeepers to all claims—preliminarily determining whether the jury is at liberty to hear the issues.

¶ 68    This notion is consistent with the majority's explanation of Rule 38 of the North Carolina Rules of Civil Procedure, which establishes the manner by which a party must request a jury trial. The Rule provides that "[a]ny party may demand a trial by jury of any issue *triable* of right by a jury[.]" N.C. Gen. Stat. § 1A-1, Rule 38(b) (2017) (emphasis added). The use of the word "triable" relates back to our Supreme Court's recognition in *Burnette*—that only certain issues make it to a jury.

¶ 69    Here, we are presented with a substantial right—the right to trial by jury— but said right is not lost, prejudiced, or less than adequately protected absent immediate review. In finding otherwise, the majority believes that *Ayscue v. Griffin,* 263 N.C. App. 1, 823 S.E.2d 134 (2018) is instructive here. However, this case is easily distinguishable from *Ayscue*. In *Ayscue*, by establishing the boundary line, the

trial court "effectively mooted all of Plaintiff's claims[,]" leaving no issues to be decided by the jury. 263 N.C. App. at 8, 823 S.E.2d at 139. Thus, the court's order essentially operated as a final judgement. In this case, the partial summary judgment order did not operate as a final judgment because it did not decide the remaining RICO or civil conspiracy claims. Accordingly, Appellants are not being deprived of any substantial right by sending the remaining claims to trial before the appeal. Indeed, the issues warranting this appeal can be raised after a final judgment has been rendered on the remaining claims.

¶ 70        Altogether, Appellants failed to meet the burden of demonstrating that the trial court's grant of partial summary judgment will result in loss, prejudice, or inadequate protection of their right to trial. Contrary to Appellant's contentions, all issues do not warrant jury consideration and a party's preference for a jury trial does not amount to a substantial right. A trial is only required if there is a genuine issue of material fact for the jury to decide. Because Appellants failed to demonstrate how denial of this interlocutory appeal would affect a substantial right, the appeal should be dismissed.

¶ 71        For the reasons stated above, I respectfully dissent.